## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) Case No. 01-10578 (JKF) |
| FEDERAL-MOGUL GLOBAL, INC., | ) (Jointly Administered) |
| T&N LIMITED, et al.,[1] | ) |
| | ) Honorable Judge Judith K. Fitzgerald |
| Debtors. | ) |
| | ) Related Dkt. No. 14237 |

### NOTICE OF APPEAL BY LONDON MARKET INSURERS

Certain Underwriters at Lloyd's, London, and Certain London Market Companies (collectively, "London Market Insurers") hereby appeal to the United States District Court for the District of Delaware, pursuant to 28 U.S.C. § 158(a), from the Bankruptcy Court's Order

---

[1]      The U.S. Debtors are Carter Automotive Company, Inc., Federal-Mogul Corporation, Federal-Mogul Dutch Holdings Inc., Federal-Mogul FX, Inc., Federal-Mogul Global Inc., Federal-Mogul Global Properties, Inc., Federal-Mogul Ignition Company, Federal-Mogul Machine Tool, Inc., Federal-Mogul Mystic, Inc., Federal-Mogul Piston Rings, Inc., Federal-Mogul Powertrain, Inc., Federal-Mogul Products, Inc., Federal-Mogul Puerto Rico, Inc., Federal-Mogul U.K. Holdings, Inc., Federal-Mogul Venture Corporation, Federal-Mogul World Wide, Inc., Felt Products Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing, Inc., and T&N Industries Inc.

The U.K. Debtors are AE Dayton Services Limited, AE Group Machines Limited, AE Holdings Limited, AE International Limited, AE Limited, AE Piston Products Limited, AE Sales (Africa) Limited, Aeroplane & Motor Aluminium Castings Limited, Amber Supervision Limited, Ashburton Road Services Limited, Associated Engineering Group Limited, Awncast Limited, Bearings (North-Western) Limited, Brake Linings Limited, Colvan Rubber Co. Limited, Contact 100 Limited, Cosmid Limited, Cranhold Limited, Dealings Limited, Dumplington Services Limited, Duron Limited, E W Engineering Limited, Edmunds, Walker & Co. Limited, Engineering Components Limited, Federal-Mogul Acquisition Company Limited, Federal-Mogul Aftermarket UK Limited, Federal-Mogul Bradford Limited, Federal-Mogul Brake Systems Limited, Federal-Mogul Bridgwater Limited, Federal-Mogul Camshaft Castings Limited, Federal-Mogul Camshafts Limited, Federal-Mogul Engineering Limited, Federal-Mogul Eurofriction Limited, Federal-Mogul Export Services Limited, Federal-Mogul Friction Products Limited, Federal-Mogul Global Growth Limited, Federal-Mogul Ignition (U.K.) Limited, Federal-Mogul Powertrain Systems International Limited, Federal-Mogul Sealing Systems (Cardiff) Limited, Federal-Mogul Sealing Systems (Rochdale) Limited, Federal-Mogul Sealing Systems (Slough) Limited, Federal-Mogul Sealing Systems Limited, Federal-Mogul Shoreham Limited, Federal-Mogul Sintered Products Limited, Federal-Mogul Systems Protection Group Limited, Federal-Mogul Technology Limited, Federal-Mogul U.K. Limited, Ferodo Caernarfon Limited, Ferodo Limited, FHE Technology Limited, Fleetside Investments Limited, F-M UK Holding Limited, FP Diesel Limited, Friction Materials Limited, G.B. Tools & Components Exports Limited, Genthope Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, High Precision Equipment Limited, Inblot Limited, Instantwonder Limited, J.W. Roberts Limited, Kings Park Housing Limited, Lalton Limited, Lanoth Limited, Lanoth Precision Equipment Limited, Leeds Piston Ring & Engineering Co. Limited, M.T.A. (Kettering) Limited, Mantro Engineering Co. Limited, Mobile Distributing (Spares) Limited, Moores Plastic Units Limited, Newalls Insulation Company Limited, Onfall Limited, Payen (Europe) Limited, Pecal Limited, Presswork-Components Limited, Sintration Limited, Sourcelook Limited, Specialloid, Limited, STS (1996) Limited, TAF International Limited, T&N Holdings Limited, T&N International Limited, T&N Investments Limited, T&N Limited, T&N Materials Research Limited, T&N Piston Products Group Limited, T&N Properties Limited, T&N Shelf Eight Limited, T&N Shelf Eighteen Limited, T&N Shelf Fifteen Limited, T&N Shelf Five Limited, T&N Shelf Four Limited, T&N Shelf Fourteen Limited, T&N Shelf Nine Limited, T&N Shelf Nineteen Limited, T&N Shelf One Limited, T&N Shelf Seven Limited, T&N Shelf Six Limited, T&N Shelf Sixteen Limited, T&N Shelf Ten Limited, T&N Shelf Thirteen Limited, T&N Shelf Thirty Limited, T&N Shelf Thirty-One Limited, T&N Shelf Thirty-Three Limited, T&N Shelf Three Limited, T&N Shelf Twenty Limited, T&N Shelf Twenty-Eight Limited, T&N Shelf Twenty-Five Limited, T&N Shelf Twenty-Four Limited, T&N Shelf Twenty-Nine Limited, T&N Shelf Twenty-One Limited, T&N Shelf Twenty-Six Limited, T&N Shelf Twenty-Two Limited, T&N Shelf Two Limited, T&N Trade Marks Limited, T&N Welfare Trust Limited, TBA Belting Limited, TBA Belting (Residual) Limited, TBA Industrial Products Limited, Telford Rubber Processors Limited, Telford Technology Supplies Limited, The British Piston Ring Company Limited, The Washington Chemical Company Limited, Tinblo Limited, Touchdown Adhesive Products Limited, Turner & Newall Limited, Turner Brothers Asbestos Company Limited, Tynoda Limited, Vanwall Cars Limited, Wellworthy Limited, Wellworthy Property Developments Limited, and William C. Jones (Polymers) Limited. Unlike all the other U.K. Debtors, T&N Investments Limited is a Scottish rather than English company and has accordingly commenced administration proceedings in Scotland rather than England.

dated March 19, 2008, and entered on the docket on March 20, 2008 at D.I. 14237 (the "Assignment Order").

The names of all parties to the Assignment Order and the names, addresses, and telephone numbers of their respective attorneys are as follows:

| Federal-Mogul Global Inc., T&N Limited, et al. (Debtors) | Official Committee of Unsecured Creditors |
|---|---|
| James F. Conlan<br>Larry J. Nyhan<br>Jeffrey C. Steen<br>Kevin T. Lantry<br>Kenneth P. Kansa<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Tel: (312) 853-7000<br><br>Laura Davis Jones<br>James E. O'Neill<br>Pachulski Stang Ziehl & Jones LLP<br>919 Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705<br>Tel: (302) 652-4100 | Charlene D. Davis<br>Eric M. Sutty<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>Wilmington, Delaware 19801<br>Tel: (302) 655-5000 |
| **Official Committee of Asbestos Claimants** | **Official Committee of Equity Security Holders** |
| Marla R. Eskin<br>Kathleen Campbell Davis<br>Campbell & Levine, LLC<br>800 N. King Street, Suite 300<br>Wilmington, Delaware 19801<br>Tel: (302) 426-1900<br><br>Elihu Inselbuch<br>Caplin & Drysdale Chartered<br>375 Park Avenue, 35th Floor<br>New York, NY 10152-3500<br>Tel: (212) 319-7125<br><br>Peter Van N. Lockwood<br>Caplin & Drysdale Chartered<br>One Thomas Circle, NW<br>Washington DC 20005<br>Tel: (202) 862-5000 | Ian Connor Bifferato<br>Garvan F. McDaniel<br>Bifferato Gentilotti<br>800 N. King Street<br>Wilmington, Delaware 19801<br>Tel: (302) 429-8600<br><br>David Heroy<br>Bruce E. Lithgow<br>Baker & McKenzie LLP<br>One Prudential Plaza<br>130 East Randolph Drive<br>Chicago, Illinois 60601<br>Tel: (312) 861-2899 |

| **JPMorgan Chase Bank, as Administrative Agent** | **Eric D. Green, Futures Representative** |
|---|---|
| Steven M. Furhman<br>Elisha Graff<br>Simpson Thacher & Bartlett LLP<br>425 Lexington Avenue<br>New York, New York 10017<br>Tel: (212) 455-2000<br><br>Marc D. Collins<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, Delaware 19899<br>Tel: (302) 651-7700 | James L. Patton, Jr.<br>Edwin J. Harron<br>Maribeth L. Minella<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building, 17th Floor<br>1000 West Street<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391<br>Tel:  (302) 571-6600 |
| **Office of United States Trustee** | **Certain Underwriters at Lloyd's, London and Certain London Market Companies** |
| Richard L. Schepacarter<br>Trial Attorney<br>Office of U.S. Trustee<br>J. Caleb Boggs Federal Buiding<br>844 North King Street<br>Room 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Tel: (302) 573-6491 | Richard W. Riley<br>Duane Morris LLP<br>1100 North Market Street, Suite 1200<br>Wilmington, DE 19801-1246<br>Telephone: (302) 657-4928<br><br>Eileen T. McCabe<br>Mendes & Mount LLP<br>750 Seventh Avenue<br>New York, New York 10019-6829<br>Telephone: (212) 261-8000<br><br>Russell W. Roten<br>Duane Morris LLP<br>633 W. 5th Street, Suite 4600<br>Los Angeles, CA 90071<br>Telephone: (213) 689-7400<br><br>Michael A. Shiner<br>Tucker Arensberg, P.C.<br>1500 One PPG Place<br>Pittsburgh, PA 15222<br>Telephone: (412) 594-5586 |

| | |
|---|---|
| **Ace Property & Casualty Insurance Company; Century Indemnity Company, as successor to CCI Insurance Company (successor to Insurance Company of North America) and CIGNA Specialty Insurance Company f/k/a California Union Insurance Company; Central National Insurance Company of Omaha (for certain policies issued through Cravens Dargan & Company, Pacific Coast, as Managing General Agent); Pacific Employers Insurance Company; Insurance Company of North America; St. Paul Mercury Insurance Company and United States Fire Insurance Company; OneBeacon America Insurance Company; Seaton Insurance Company; Stonewall Insurance Company; and, TIG Insurance Company (solely as successor to International Insurance Company)** <br> Brian L. Kasprzak <br> Michael J. Joyce <br> Marts, O'Neill, O'Brien and Courtney, P.C. <br> 913 North Market Street, Suite 800 <br> Wilmington, Delaware 19801 <br> Tel: (302) 658-6538 <br> <br> Mark D. Plevin <br> Leslie A. Epley <br> Kelly R. Cusick <br> Crowell & Moring LLP <br> 1101 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20004-2595 <br> Tel: (202) 624-2500 | **AIG Casualty Company; AIU Insurance Company; American Home Assurance Company; Granite State Insurance Company; Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa; and New Hampshire Insurance Company** <br> Sean J. Bellew <br> Cozen O'Connor <br> 1201 N. Market Street <br> Suite 1400 <br> Wilmington, DE 19801 <br> Tel:  (302) 295-2026 <br> <br> Michael S. Davis <br> Jantra Van Roy <br> Zeichner Ellman & Krause LLP <br> 575 Lexington Avenue <br> New York, New York 10022 <br> Tel: (212) 223-0400 |

| | |
|---|---|
| **Allianz Global Corporate &  Specialty AG (as successor-by-partial-merger to Allianz Versicherungs AG as to Policy No. H. 0 001 456); Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Insurance Company); and Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.)**<br>James S. Yoder<br>White and Williams LLP<br>824 N. Market Street, Suite 902<br>P.O. Box 709<br>Wilmington, DE 19899-0709<br>Tel: (302) 467-4524<br><br>Elit R. Felix, II<br>Margolis Edelstein<br>The Curtis Center, 4th Floor<br>601 Walnut Street<br>Philadelphia, PA 19106-3304<br>Tel: (215) 931-5870 | **Columbia Casualty Company, Continental Casualty Company, The Continental Insurance Company, Both In Its Individual Capacity and As Successor To Certain Interests Of Harbor Insurance Company**<br>Bruce E. Jameson<br>Prickett, Jones & Elliott, P.A.<br>1310 King Street<br>Wilmington, Delaware 19899<br>Tel: (302) 888-6500<br><br>David C. Christian II<br>William J. Factor<br>Seyfarth Shaw LLP<br>131 S. Dearborn Street, Suite 2400<br>Chicago, Illinois 60603<br>Tel: (312) 460-5000<br><br>Clinton E. Cameron<br>Ross, Dixon & Bell, LLP<br>55 West Monroe Street, Suite 3000<br>Chicago, IL 60603-5758<br>Tel: (312) 759-1920 |
| **Fireman's Fund Insurance Company and National Surety Company**<br>John D. Demmy<br>Stevens & Lee, P.C.<br>1105 North Market Street, 7th Floor<br>Wilmington, DE 19801<br>Tel: (302) 425-3308<br><br>Leonard P. Goldberger<br>Stevens & Lee, P.C.<br>1818 Market Street, 29th Floor<br>Philadelphia, PA 19103<br>Tel: (215) 864-7000 | **Globe Indemnity Company and Royal Indemnity Company**<br>Karen V. Sullivan<br>Oberly, Jennings & Rhodundra, P.A.<br>800 Delaware Avenue, Suite 901<br>P.O. Box 2054<br>Wilmington, DE 19899<br>Tel: (302) 576-2000<br><br>Carl J. Pernicone<br>Wilson, Elser, Moskowitz, Edelman & Dicker LLP<br>150 East 42nd Street<br>New York, NY 10017-5639<br>Tel: (212) 490-3000 |

| | |
|---|---|
| **Hartford Accident and Indemnity Company, First State Insurance Company, and New England Insurance Company**<br>Michael W. Yurkewicz<br>Klehr, Harrison, Harvey Branzburg and Ellers LLP<br>919 Market Street, Suite 1000<br>Wilmington, Delaware 19801<br>Tel: (302) 426-1189<br><br>Craig Goldblatt<br>Nancy L. Manzer<br>Wilmer Cutler Pickering Hale and Dorr LLP<br>1875 Pennsylvania Ave., NW<br>Washington, D.C. 20006<br>Tel: (202) 663-6000<br><br>William J. Bowman<br>James P. Ruggeri<br>Edward B. Parks, II<br>Hogan & Hartson LLP<br>555 Thirteenth Street, N.W.<br>Washington, D.C. 20004<br>Tel: (202) 637-5600 | **Employers Insurance Company of Wausau**<br>Christopher P. Simon<br>Cross & Simon, LLC<br>913 North Market Street, 11th Floor<br>P.O. Box 1380<br>Wilmington, DE 19899-1380<br>Tel: (302) 383-4224<br><br>John J. Dillon<br>Anthony S. Fernandez<br>Mary-Lee Payne<br>Ami Specktor<br>Milton Altman Canale & Dillon, LLC<br>4600 East-West Highway, Suite 201<br>Bethesda, MD 20814<br>Tel: (301) 652-7332 |

| | |
|---|---|
| **The Travelers Indemnity Company and certain affiliates and Travelers Casualty and Surety Company f/k/a The Aetna Casualty and Surety Company**<br>Stuart D. Rosen<br>G. Eric Brunstad, Jr.<br>Bingham McCutchen LLP<br>One State Street<br>Hartford, Connecticut 06103-3178<br>Tel:  (860) 240-2700<br><br>Rheba Rutkowski<br>Bingham McCutchen LLP<br>150 Federal Street<br>Boston, MA 02110<br>Tel:  (617) 951-8000 | |

Dated:  March 27, 2008

DUANE MORRIS LLP
Richard W. Riley (No. 4052)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone:     (302) 657-4928
Facsimile:      (302) 657-4901

MENDES & MOUNT LLP
Eileen T. McCabe
750 Seventh Avenue
New York, New York 10019-6829
Telephone:     (212) 261-8000
Facsimile:      (212) 261-8750

DUANE MORRIS LLP
Russell W. Roten (CA State Bar No. 170571)
Jeff D. Kahane (CA State Bar No. 223329)
Katherine Nichols (CA State Bar No. 228893)
633 W. 5th Street, Suite 4600
Los Angeles, CA 90071
Telephone:     (213) 689-7400
Facsimile:      (213) 689-7401

TUCKER ARENSBERG, P.C.
Michael A. Shiner (PA ID 78088)
mshiner@tuckerlaw.com
1500 One PPG Place
Pittsburgh, PA 15222
Telephone:    (412) 594-5586
Facsimile:    (412) 594-5619

*Counsel for Certain Underwriters at Lloyd's,
London, and Certain London Market Companies*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____
|                                           |
| In re:                                    )    Chapter 11
|                                           )
|                                           )    Case No. 01-10578 (JKF)
|        FEDERAL-MOGUL GLOBAL               )    (Jointly Administered)
|        INC., T&N LIMITED, et al.,         )
|                                           )    Related Docket Nos. 13182, 582593566,
|                                           )    13499, 13660, 13671, 13672, and 13674.
|                                           )
|                        Debtors.           )
_____)

**MEMORANDUM OPINION REGARDING ASSIGNMENT AND PREEMPTION ISSUE[1]**

Before the court is an issue related to but bifurcated from the plan confirmation process. The court's jurisdiction is not disputed. As stated by the parties, the issue is: "Whether, under the Bankruptcy Code as a matter of law, the [assignment of Asbestos Insurance Policies to a §524(g) trust] is valid and enforceable against the Insurers notwithstanding anti-assignment provisions in or incorporated in the Policies and applicable state law."[2]

_____

[1]  This Memorandum Opinion constitutes our findings of fact and conclusions of law.

[2]Certain of the Objecting Insurers are parties to a Stipulation and Agreed Order (Doc. No. 10113 at Exhibit A, the "Insurance Stipulation"), which was approved by an order of this court dated September 19, 2006 (Doc. No. 10606), by which such Objecting Insurers narrowed the scope of their objections related to confirmation of the Plan, in relevant part, to the following legal issue: "Whether, under the Bankruptcy Code as a matter of law, the Assignment is valid and enforceable against the Insurers notwithstanding anti-assignment provisions in or incorporated in the Policies and applicable state law." Doc. No. 10606 at Exh. A, Insurance Stipulation at §3(a)(i). The Insurance Stipulation further provided that the parties thereto would "request that the Bankruptcy Court determine such objections under the Bankruptcy Code as a matter of law" and "[e]ach Party retains all appellate rights with respect to any adjudication by the Bankruptcy Court or any higher court of the issues identified in Section 3(a) above, and may

(continued...)

1

A hearing to consider confirmation of the Plan was held on June 18-21, July 9-10, 2007, and October 1-2, 2007, at which all objections to confirmation were considered. Thereafter, after devoting a considerable amount of time and effort, the Debtors, Plan Proponents,[3]

---

[2](...continued)
appeal any such adjudications." *Id.* at §4(a), (f). Certain Underwriters at Lloyds, London and Certain London Market Companies (collectively "LMI") and Plan Proponents entered into a stipulation on July 10, 2007 (Doc. No. 13062, Exh. 1, the "LMI Insurance Stipulation"), in which they agreed that the only issue to be contested in the Plan confirmation between LMI and the Plan Proponents was "whether under the Bankruptcy Code, as a matter of law, the assignment of any Asbestos Insurance Policies subscribed by LMI, is valid and enforceable against LMI notwithstanding (i) anti-assignment/consent to assignment provisions in or incorporated in the Asbestos Insurance Policies subscribed by LMI and (ii) applicable state law." LMI Insurance Stipulation, ¶ 2 at 1.

[3] The Plan Proponents are as follows: Debtors, the Official Committee of Unsecured Creditors, the Official Committee of Asbestos Claimants, the Legal Representatives for Future Asbestos Claims, the Official Committee of Equity Security Holders, and JPMorgan Chase Bank, N.A, as Administrative Agent under the Bank Credit Agreement.

Objecting Insurers,[4] and other interested parties were able to resolve all remaining objections to

confirmation except those related to the Assignment and Preemption Issue.[5]

---

[4]    The "Objecting Insurers" are:  Ace Property & Casualty Insurance Company; Century
Indemnity Company, as successor to CCI Insurance Company (successor to Insurance Company
of North America) and CIGNA Specialty Insurance Company f/k/a California Union Insurance
Company; Central National Insurance Company of Omaha (for certain policies issue through
Cravens Dargan & Company, Pacific Coast, as Managing General Agent); Pacific Employers
Insurance Company; Insurance Company of North America; St. Paul Mercury Insurance
Company and United States Fire Insurance Company (collectively, "ACE"); AIG Casualty
Company; AIU Insurance Company; American Home Assurance Company; Granite State
Insurance Company; Insurance Company of the State of Pennsylvania; Lexington Insurance
Company; National Union Fire Insurance Company of Pittsburgh, Pa; New Hampshire Insurance
Company (collectively, "AIG Member Companies"); Allianz Global Corporate & Specialty AG
(as successor-by-partial-merger to Allianz Versicherungs AG as to Policy No. H 0 001 456);
Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Underwriters, Inc.) (Collectively,
"Allianz"); Columbia Casualty Company, Continental Casualty Company, The Continental
Insurance Company, Both In Its Individual Capacity and As Successor To Certain Interests Of
Harbor Insurance Company (collectively, "CNA Entities"); Fireman's Fund Insurance Company
and National Surety Company (collectively, "Fireman's Fund"); Globe Indemnity Company
("Globe"); Hartford Accident and Indemnity Company, First State Insurance Company, and New
England Insurance Company (collectively, "Hartford"); Certain Underwriters at Lloyds, London
and Certain London Market Companies (collectively, "London"); OneBeacon America
Insurance Company ("OneBeacon"); Royal Indemnity Company ("Royal"); Seaton Insurance
Company ("Seaton"); Stonewall Insurance Company ("Stonewall"); TIG Insurance Company
(solely as successor to International Insurance Company) ("TIG"); The Travelers Indemnity
Company and certain affiliates and Travelers Casualty and Surety Company f/k/a The Aetna
Casualty and Surety Company (collectively, "Travelers"); Employers Insurance Company of
Wausau ("Wausau").

[5]    Order of October 11, 2007, Approving Stipulation By and Among (I) Plan Proponents,
(II) Cooper Parties, (III) PCT/Pneumo Parties, (IV) PepsiAmericas, Inc., and (V) Stipulating
Pneumo Abex Insurers and Clarifying Effect of Plan B Settlement Agreement and Withdrawal of
Objections Thereto, Doc. No. 582593568;  Order of November 8, 2007, Authorizing and
Approving Settlement with Stonewall Insurance Company, Doc. No. 13662;  Order of November
8, 2007, Authorizing and Approving Settlement with Seaton Insurance Company, Doc. No.
13663;  Order of November 8, 2007, Authorizing and Approving Settlement with OneBeacon
American Insurance Company, Doc. No. 13664;  Order of November 8, 2007, Authorizing and
Approving Settlement with TIG Insurance Company, Doc. No. 13665;  Order of November 8,
2007, Authorizing and Approving Settlement with ACE USA Companies, Doc. No. 13666;
Order of November 8, 2007, Granting Motion for An Order Approving Proposed Settlement

(continued...)

On October 17, 2007, the Plan Proponents and the certain Objecting Insurers filed a Joint Motion Seeking Determination of Asbestos Insurance Assignment and Preemption Issues Pursuant to the Plan[6] and seeking court approval of the Stipulation to Preserve Appeals on the Asbestos Insurance Assignment and Preemption Issue.[7]  This stipulation was entered into by and among the Plan Proponents and certain Objecting Insurers.  A separate stipulation was entered into by and among the Plan Proponents and Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, "LMI"), ("LMI" Stipulation).[8]  The LMI Stipulation was subsequently added to the October 17, 2007, Joint Motion.[9]  The certain Objecting Insurers' stipulation and the LMI Stipulation shall be collectively referred to herein as the "Stipulations."  A hearing was held on October 25, 2007, and the court entered the Stipulation Orders on November 8, 2007.[10]

---

[5](...continued)
Agreement By, Between and Among Federal-Mogul Corporation, Federal-Mogul Products Inc., Cooper Industries, LLC, Magnetek, Inc., and Travelers, Doc. No. 13667;  Order of November 8, 2007, Approving Stipulation By and Among the Debtors, the Official Committee of Asbestos Claimants, the Legal Representative for Future Asbestos Claimants, and the CNA Entities, Doc. No. 13668;  Order of November 8, 2007, (I) Approving Compromise and Settlement with Certain Insurers Pursuant to Asbestos Bodily Injury Coverage in Place Agreement and Related Commutation Agreement, (II) Authorizing Sale of Estate Property Free and Clear of Liens and Other Interests, And (III) Partially Allowing Travelers Claim No. 10163 as Class 1E Claim, Doc. No. 13669.

[6]  Doc. No. 13499.

[7]  Doc. No. 13499, Exhibit A.

[8]  Doc. No. 582593612.

[9]  Doc. No. 13499.

[10]  Doc. Nos. 13670 and 13671.

On November 8, 2007, this court entered an order (the "Confirmation Order")[11]

confirming the Fourth Amended Joint Plan of Reorganization For Debtors and Debtors-In-

Possession (As Modified) (the "Plan")[12] of Federal-Mogul Global Inc., T&N LIMITED, et al.,[13]

---

[11]  Doc. No. 13674.

[12]  Doc. No. 13360.  ("This is the Plan as filed on June 5, 2007, at Doc. Nos. 1260, 12621 and 12622 updated to incorporate the Plan Modifications filed on July 31, 2007 (Doc. No. 582593567), September 26, 2007 (Doc. No. 13374), September 27, 2007 (Doc. No. 13391), October 30, 2007 (Doc. No. 13614), and November 5, 2007 (Doc. No. 13649)").

[13]  The U.S. Debtors (collectively, the "U.S. Debtors") are Carter Automotive Company, Inc., Federal-Mogul Corporation, Federal-Mogul Dutch Holdings Inc., Federal-Mogul FX, Inc., Federal-Mogul Global Inc., Federal-Mogul Global Properties, Inc., Federal-Mogul Ignition Company, Federal-Mogul Machine Tool, Inc., Federal-Mogul Mystic, Inc., Federal-Mogul Piston Rings, Inc., Federal-Mogul Powertrain, Inc., Federal-Mogul Products, Inc., Federal-Mogul Puerto Rico, Inc., Federal-Mogul U.K. Holdings, Inc., Federal-Mogul Venture Corporation, Federal-Mogul World Wide, Inc., Felt Products Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing, Inc., and T&N Industries Inc.

Those Debtors that are incorporated under the laws of England and Wales or Scotland and are subjects of the Plan (collectively, the "U.K. Debtors") are AE Piston Products Limited, Aeroplane & Motor Aluminum Castings Limited, Ashburton Road Services Limited, Brake Linings Limited, Duron Limited, Edmunds, Walker & Co. Limited, Federal-Mogul Aftermarket U.K. Limited, Federal-Mogul Bradford Limited, Federal-Mogul Bridgewater Limited, Federal-Mogul Camshaft Castings Limited, Federal-Mogul Camshafts Limited, Federal-Mogul Engineering Limited, Federal-Mogul Eurofriction Limited, Federal-Mogul Friction Products Limited, Federal-Mogul Global Growth Limited, Federal-Mogul Ignition (U.K.) Limited, Federal-Mogul Powertrain Systems International Limited, Federal-Mogul Sealing Systems (Cardiff) Limited, Federal-Mogul Sealing Systems (Rochdale) Limited, Federal-Mogul Sealing Systems (Slough) Limited, Federal-Mogul Sealing Systems Limited, Federal-Mogul Shoreham Limited, Federal Mogul Sintered Products Limited, Federal-Mogul Systems Protection Group Limited, Federal-Mogul Technology Limited, Ferodo Caernarfon Limited, Ferodo Limited, Fleetside Investments Limited, F-M U.K. Holding Limited, Friction Materials Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, J.W. Roberts Limited, Lanoth Limited, Newalls Insulation Company Limited, TAF International Limited, T&N Holdings Limited, T&N International Limited, T&N Investments Limited, T&N Limited, T&N Materials Research Limited, T&N Piston Products Group Limited, T&N Properties Limited, T&N Shelf Eighteen Limited, T&N Shelf Nineteen Limited, T&N Shelf One Limited, T&N Shelf Seven Limited, T&N Shelf Three Limited, T&N Shelf Twenty Limited, T&N Shelf Twenty-One Limited, T&N Shelf Twenty-Six Limited, TBA Belting Limited, TBA Industrial Products

(continued...)

("Debtors") and also entered Findings of Fact and Conclusions of Law Regarding Confirmation

of the Fourth Amended Joint Plan of Reorganization for Debtors and Debtors-in-Possession (As

Modified) (the "Findings of Fact and Conclusions of Law").[14]  On November 13, 2007, the

United States District Court  for the District of Delaware entered an order (the "Affirmance

Order")[15] affirming the Confirmation Order and adopting the Findings of Fact and Conclusions

of Law.  Consistent with the terms of the Order and Stipulation to Preserve Appeals on the

Asbestos Insurance Assignment and Preemption Issue[16] and the Order and Stipulation Regarding

Remaining London Market Objections to the Plan[17] (collectively, the "Stipulation Orders"), the

Confirmation Order did not constitute or contain a ruling on the objections[18] of the Objecting

---

[13](...continued)
Limited, Telford Technology Supplies Limited, The Washington Chemical Company Limited, Turner & Newall Limited, Turner Brothers Asbestos Company Limited, and Wellworthy Limited.  Certain additional U.K. affiliates of the U.S. Debtors and U.K. Debtors have commenced chapter 11 cases but are not subjects of the Plan.

[14]  Doc. No. 13672.

[15]  Doc. No. 13698.  The Affirmance Order was signed on November 13, 2007, entered on the Bankruptcy Court docket on November 14, 2007, and entered on the District Court docket on November 16, 2007 (Case No. 07-00198 (JHR), D.I. 3).  The plan became effective on December 27, 2007.  *See* Notice of (A) Entry of Order Confirming Fourth Amended Joint Plan of Reorganization for Debtors and Debtors-In-Possession (As Modified); (B) Effective Date of the Plan; (C) Substantial Consumption of the Plan; And (D) Bar Dates for Certain Administrative Claims and Professional Claims, Doc. No. 13940.

[16]  Doc. No. 13671.

[17]  Doc. No. 13670.

[18]  The Objecting Insurers' objections regarding the Assignment and Preemption Issue were articulated in the briefs appended under Tabs 9a and 9b to the Joint Submission of Plan Objectors' Post-Trial Briefs In Opposition To Confirmation Of Fourth Amended Joint Plan Of Reorganization, Doc. No. 13182, and in prior submissions referred to therein.  The Plan Proponents' responses to these objections were set forth in the Post-Trial Brief, Doc. No.

(continued...)

Insurers to the confirmation of the Plan on the ground that assignment of the Insurance Rights to the Trust is not permitted, as a matter of law, under the Bankruptcy Code ("Assignment and Preemption Issue").  The Stipulation Orders provided that this court would address the Assignment and Preemption Issue separately from the confirmation of the Plan.[19]  The question before this court, regarding the Assignment and Preemption Issue, is whether under the Bankruptcy Code, as a matter of law, the assignment of the Asbestos Insurance Policies to a §524(g) trust is valid and enforceable, notwithstanding any anti-assignment or consent to assignment provisions incorporated in the Asbestos Insurance Policies and applicable state law. There is a dispute among the parties as to whether any anti-assignment provision of the policies is violated under state law at all, given the insurance neutrality provisions[20] in the Plan, which preserve the insurers' right to argue state law in state courts.  However, this court is not addressing whether the provisions of the policies and applicable state law are violated, only whether or not, in this case, they are preempted by the Bankruptcy Code.

---

[18](...continued)
582593566, and Reply Brief of Plan Supporters in Support of Confirmation of Fourth Amended Joint Plan of Reorganization (As Modified), Doc. No. 13249, and in prior submissions referred to therein.  Argument was held as part of the Confirmation Hearing.

[19]  The Order and Stipulation Regarding Remaining London Market Objections to the Plan, Doc. No.13670, at 4, states:  ". . . section 7.1 of the Plan sets forth the conditions to confirmation of the Plan, and there is no condition to confirmation stated in the Plan that the Bankruptcy Court or the District Court must approve the assignment of Insurance Rights or determine that the Bankruptcy Code, as a matter of law, preempts state law and contractual provisions prohibiting assignment absent the consent of the insurers.  Hence, Plan confirmation does not depend on the entry of an Order determining the Preemption Issues (the "Preemption Order") in favor of the Plan Proponents.  Thus, regardless of who prevails on the Preemption Issues, the Plan may be confirmed.  Hence, the Bankruptcy Court's consideration of the Preemption Issues is a separate determination from the Court's consideration of whether to confirm the Plan."

[20]  *See* Insurance Neutrality Provision, Section 10.4 of Plan, Doc. No. 13660.

For the reasons explained in detail below, the Objecting Insurers' objections regarding the assignment and preemption issue will be overruled. The assignment of rights in certain insurance policies to the asbestos trust, as provided in part by Section 4.3 of the Plan, is valid and enforceable under §§524(g), 541(c)(1), 1123(a)(5)(B) and 1129(a)(1) of the Bankruptcy Code. The anti-assignment provisions in the policies and applicable state law are preempted. Among other authorities, we rely upon the decisions in *Global Industrial Technologies, Inc.*, Case No. 02-21626, Memorandum Order at 2-7, Doc No. 7703 (Bankr. W.D. Pa., Sept. 21, modified Sept. 24, 2007), *In re Kaiser Aluminum Corporation,* 343 B.R. 88 (D.Del. 2006), and *In re Western Asbestos Co.,* 313 B.R. 456 (Bankr.N.D.Cal. 2004), *aff'd* 2004 WL 1944792 (N.D.Cal. April 16, 2004).

**DISCUSSION**

Section 541 of the Bankruptcy Code defines property of the estate broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case," "[p]roceeds . . . from the property of the estate," and "[a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. §541(a)(1), (6), and (7) respectively. The Court of Appeals for the Third Circuit has expressly concluded that an insurance policy is property of the estate within the meaning of §541, even if the policy has not matured, has no cash value, or is otherwise contingent. *Estate of Lellock v. Prudential Insurance. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987).[21]

---

[21] The Court of Appeals for the Third Circuit's conclusion is consistent with those reached by the majority of other courts of appeals. *See e.g., Homsy v. Floyd (In re Vitek, Inc.),*

(continued...)

Section 1123(a) provides that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . (5) provide adequate means for the plan's implementation, such as . . . (B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan." 11 U.S.C. §1123(a)(5)(B). Courts that have delved into the reach of §1123 have found that it expressly preempts nonbankruptcy rights that might otherwise interfere with the implementation of a Chapter 11 plan. *See, e.g., In re FCX, Inc.*, 853 F.2d 1149, 1155 (4th Cir. 1988)(to the extent that any nonbankruptcy law or contract prohibits debtor from adequately implementing terms of a plan, "the plan may propose such actions notwithstanding nonbankruptcy law or agreements"), *cert. denied sub nom. Universal Cooperatives, Inc. v. FCX, Inc.*, 489 U.S. 1011 (1989); *In re Stone & Webster, Inc.*, 286 B.R. 532, 543 (Bankr. D. Del. 2002)("[§] 1123(a) can be effected without regard to otherwise applicable nonbankruptcy law . . ."). Section 1123(a)(5) "is an empowering statute" that "enhanc[es] the ability of the trustee or debtor in possession to deal with property of the estate." *In re FCX, Inc.*, 853 F.2d at 1155.

It is established in this circuit that under §1123(a)(5) assignment of policy proceeds to a §524(g) trust is not prohibited by anti-assignment provisions in insurance policies. *In re Combustion Engineering*, 391 F.3d 190 (3d Cir. 2004). The Court of Appeals for the Third

---

[21](...continued)
51 F.3d 530, 535 (5th Cir. 1995)(insurance policies covering debtors' liability vis-a-vis third parties are estate property, as are the proceeds of those policies); *Health Ctr. v. Insurance. Co. of N. Am. (In re St. Clare's Hosp. & Health Ctr.)*, 934 F.2d 15, 18 (2d Cir. 1991)("the debtors' [sic] rights under its insurance policies are property of a debtor's estate under §541(a)); *In re Titan Energy, Inc.*, 837 F.2d 325, 329 (8th Cir. 1988)(products liability policies in a debtor's name are estate property under §541); *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560 (1st Cir. 1986)(products liability policies are estate property).

Circuit explained that "[p]ut simply, §541 prohibits restrictions on the interests of the debtor,

which includes the insurance policies held by [the debtor]," id. at 219, and, with respect to

property of the estate, §1123(a)(5)(B) expressly contemplates that the debtor's interests in the

policies may be assigned to a trust or other entity. *Id.* at n.27.

Furthermore, once an event occurs that gives rise to the insurer's liability under the

policy, the policy itself can be assigned. *See generally* 3 Couch on Insurance §35.7 (3d ed.

1999). *See also In re Western Asbestos Company,* 313 B.R. 456, 462 (Bankr. N.D. Cal. 2003),

*aff'd* 2004 WL 1944792 (N.D.Cal. April 16, 2004) (policies or rights transferable under 11

U.S.C. §1123(a)(5) notwithstanding contrary state law); *Viola v. Fireman's Fund Insurance Co.*,

965 F.Supp. 654, 658 (E.D. Pa. 1997)("[u]nder Pennsylvania law, an insurer may not limit an

insured's ability to assign . . . rights under a policy after the occurrence of the event which gives

rise to the insurer's liability").   The court in *Viola* also noted as follows:

> [a]fter a loss has occurred, the right of the insured or his successor
> in interest to the indemnity provided in the policy becomes a fixed
> and vested right; it is an obligation or debt due from the insurer to
> the insured, subject only to such claims, demands, or defenses as
> the insurer would have been entitled to make against the original
> insured.

965 F.Supp. at 658 (citation omitted).  To the same effect see *National Memorial Services v.*

*Metropolitan Life Insurance Co.*, 49 A.2d 382 (Pa. 1946)(anti-assignment clause does not

preclude beneficiaries of life insurance policy from assigning proceeds of policy after the event

giving rise to liability; it applies only to assignments before liability).  For federal cases to the

same effect see *OneBeacon America Insurance Co. v. A.P.I., Inc.* 2006 WL 1473004 at *2-*3

(D.Minn. May 25, 2006)(anti-assignment clauses are to protect insurer from increase in the risk

it agreed to insure but assignment of loss does not expand risk to insurer, simply allows change

in identity to "reconnect the policy's coverage to the insured loss;" most courts follow the risk/loss distinction to allow insured to assign loss); *R.L. Vallee, Inc. v. American Intern. Specialty Lines Insurance Co.*, 431 F.Supp.2d 428, 435 (D.Vt. 2006)(assignments after loss are permitted as there is no additional risk to insurer; anti-assignment clauses operate after loss occurs to limit the free assignability of claims, which is not favored by the law).

In this case, to the extent that the events giving rise to liability have already occurred, there will be no additional risk to the insurance companies by virtue of the assignments. Coverage issues, including, *inter alia*, proof that an event giving rise to liability occurred within the covered period before a specific policy can be accessed for coverage, are all preserved.[22]

---

[22] *See* Plan Section 10.4 Insurance Neutrality, Doc. No. 13660, at 152-55.

"**10.4.1.** The provisions of this Section 10.4.1 shall apply to all Entities (including, without limitation, all Asbestos Insurance Companies); provided, however, that with respect to Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, "London Market Insurers and any Asbestos Insurance Policies subscribed by London Market Insurers (or any Asbestos Insurance Settlement Agreements applicable to such Asbestos Insurance Policies), the provisions of this Section 10.4.1 shall not be applicable, and the provisions of Section 10.4.2 shall be applicable.

**10.4.1.1.** Nothing in the Plan, the Plan Documents, the Confirmation Order, or any finding of fact and/or conclusion of law with respect to the Confirmation of the Plan shall limit the right of any Asbestos Insurance Company to assert any Asbestos Insurer Coverage Defense.

**10.4.1.2.** The Plan, the Plan Documents, the Confirmation Order, and the Bankruptcy Insurance Stipulation shall be binding on the Debtors, the Reorganized Debtors, the Trust and the beneficiaries of the Trust. The obligations, if any, of the Trust to pay holders of Asbestos Personal Injury Claims and Demands shall be determined pursuant to the Plan and the Plan Documents. None of (I) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (II) the Confirmation Order or any findings and conclusions entered with respect to Confirmation, nor (III) any estimation or valuation of Asbestos Personal Injury Claims, either individually or in the aggregate (including, without limitation, any agreement as to the valuation of Asbestos Personal Injury Claims) in the Reorganization Cases shall, with respect to any Asbestos Insurance Company, constitute a trial or hearing on the merits or an adjudication or judgment; or accelerate the obligations, if any, of any Asbestos Insurance Company under its Asbestos Insurance Policies; or be used as evidence in any form to prove:

(i) that any of the Debtors, the Trust, or any Asbestos Insurance Company is

(continued...)

11

---

[22](...continued)
liable for, or otherwise obligated to pay with respect to, any individual Asbestos Personal
Injury Claim or Demand;

(ii) that the procedures established by the Plan, including the Asbestos Personal
Injury Trust Distribution Procedures, for evaluating and paying Asbestos Personal Injury
Claims and Demands are reasonable;

(iii) that the procedures established by the Plan, including the Asbestos Personal
Injury Trust Distribution Procedures, for evaluating and paying Asbestos Personal Injury
Claims and Demands are consistent with any procedures that were used to evaluate or
settle Asbestos Personal Injury Claims against the Debtors before the Petition Date;

(iv) that the settlement of, or the value assigned to, any individual Asbestos
Personal Injury Claim pursuant to the Asbestos Personal Injury Trust Distribution
Procedures was reasonable and/or otherwise appropriate;

(v) that any of the Asbestos Insurance Companies participated in and/or
consented to the negotiation of the Plan or any of the Plan Documents;

(vI) that any of the Debtors or the Trust has suffered an insured loss with respect
to any Asbestos Personal Injury Claim or Demand; or

(vii) as to (A) the liability of the Debtors or the Trust for Asbestos Personal Injury
Claims or Demands, whether such Claims or Demands are considered individually or on
an aggregate basis; or (B) the value of such Asbestos Personal Injury Claims or
Demands, individually or in the aggregate.

**10.4.1.3.** Nothing in the Plan or the Plan Documents shall affect or limit, or be construed
as affecting or limiting, the protection afforded to any Settling Asbestos Insurance Company by
the Supplemental Injunction, the Third Party Injunction, and/or the Asbestos Insurance Entity
Injunction.

**10.4.1.4.** Nothing in this Section 10.4 is intended or shall be construed to preclude
otherwise applicable principles of res judicata or collateral estoppel from being applied against
any Asbestos Insurance Company with respect to any issue that is actually litigated by such
Asbestos Insurance Company as part of its objections, if any, to Confirmation of the Plan or as
part of any contested matter or adversary proceeding filed by such Asbestos Insurance Company
in conjunction with or related to Confirmation of the Plan. Plan objections that are withdrawn
prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually
litigated.

**10.4.1.5.** Nothing in the Plan, the Plan Documents, the Confirmation Order, or any
finding of fact and/or conclusion of law with respect to the Confirmation or consummation of the
Plan shall limit the right, if any, of (i) any Asbestos Insurance Company, in any Asbestos
Insurance Action, to assert any Asbestos Insurer Coverage Defense, including by presenting
evidence and/or argument with respect to any of the matters specified in clauses (i) through (vii)
of Section 10.4.1.2 of the Plan or (ii) any other party in any such Asbestos Insurance Action to
assert any appropriate position. Except as provided in Section 10.4.1.4 above, none of the

(continued...)

The principle enunciated in *National Memorial Services, supra,* that an anti-assignment clause is unenforceable after the loss has occurred, was reiterated in *Egger v. Gulf Insurance Co.*, 903 A.2d 1219 (Pa. 2006). The Pennsylvania Supreme Court in *Egger* noted that *National*

---

[22](...continued)
matters specified in clauses (i) through (vii) of Section 10.4.1.2 of the Plan shall have any res judicata or collateral estoppel effect against any Asbestos Insurance Company.

**10.4.2. Insurance Neutrality Provisions Applicable Solely to London Market Insurers.** This Section 10.4.2 shall apply solely with respect to London Market Insurers and any Asbestos Insurance Policies subscribed by London Market Insurers (or Asbestos Insurance Settlement Agreements relating to such Asbestos Insurance Policies).

**10.4.2.1.** Except as provided in Section 10.4.2.2, notwithstanding anything to the contrary in the Confirmation Order, the Plan or any of the Plan Documents, nothing in the Confirmation Order, the Plan or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing London Market Insurers' legal, equitable or contractual rights, if any, in any respect. The rights of London Market Insurers shall be determined under the Asbestos Insurance Policies or Asbestos Insurance Settlement Agreements.

**10.4.2.2.** Nothing in the Plan or the Plan Documents shall affect or limit, or be construed as affecting or limiting, the protection afforded to any Settling Asbestos Insurance Company by the Supplemental Injunction, the Third Party Injunction, and/or the Asbestos Insurance Entity Injunction.

**10.4.2.3.** Nothing in this Section 10.4.2 is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against London Market Insurers with respect to any issue that is actually litigated by London Market Insurers as part of their objections, if any, to Confirmation of the Plan or as part of any contested matter or adversary proceeding filed by London Market Insurers in conjunction with or related to Confirmation of the Plan. Plan objections that are withdrawn prior to the conclusion of the Confirmation Hearing shall be deemed not to have been actually litigated. The Plan Proponents and London Market Insurers have agreed in a stipulation separate from this Plan (the "London Market Insurers Stipulation" that the only issue London Market Insurers will litigate in connection with Confirmation of the Plan is whether, under the Bankruptcy Code as a matter of law, the assignment of any Asbestos Insurance Policies or other rights and obligations with respect to, arising under, or related to Asbestos Insurance Policies subscribed by London Market Insurers, is valid and enforceable against London Market Insurers notwithstanding (i) anti-assignment provisions in or incorporated in the Asbestos Insurance Policies subscribed by London Market Insurers and (ii) applicable state law."

*Memorial Services* involved a life insurance policy but applied the rule to the facts before it

involving personal injury and an excess insurance policy.  The court in *Egger* said:

> The logic behind the general rule is that post-loss assignments do
> not invalidate the policy, thereby changing the risks the insurer
> undertook to insure; rather, they assign the right to a money claim.
> *See* G. Couch, CYCLOPEDIA OF INSURANCE LAW § 35.7 (3d
> ed. 1995) ("The purpose of a no assignment clause is to protect the
> insurer from increased liability, and after events giving rise to the
> insurer's liability have occurred, the insurer's risk cannot be
> increased by a change in the insured's identity.").

> While *Nat'l Mem'l* involved life insurance policies and the matter
> concerns an excess insurance policy, this distinction does not
> warrant a different outcome or analysis.  The triggering event for
> coverage in *Nat'l Mem'l* was the death of the insured. Accordingly,
> we found that there was no "sound reason for the insurance
> company to forbid or limit an assignment by a beneficiary of the
> amount due him or her after the death of the insured."  *Id.* at 382-83.

> However, with the Gulf excess insurance policy, there was no
> death of an insured; rather, Foulke purchased coverage to protect
> itself against an award of damages exceeding the limits of its
> primary liability policy with respect to its activities at the PECO
> plant.  Foulke provided plant protection and security services
> pursuant to its contracts with PECO.  Gulf insured these activities
> of Foulke through its issuance of an excess insurance policy,
> "which provides coverage for any sum the insured is obligated to
> pay for bodily injury arising out of an 'occurrence.'"  Trial Court
> Opinion at 2.  It is an "Occurrence" that triggers the obligation of
> Foulke. . . .

> Consequently, in parsing the terms of the policy, the triggering
> event for coverage was bodily injury occasioned by Foulke, which
> arose out of an Occurrence during the period of the policy. . . .

> In attempting to circumvent the principle that we articulated in
> *Nat'l Mem'l* that a restriction against a post-loss assignment is
> void, Gulf asserts that its loss did not arise until the jury reached its
> verdict and awarded damages in an amount exceeding the
> underlying $ 1,000,000.00 of primary insurance coverage . . .

14

> This argument lacks merit. First, as Appellee correctly notes, the term "by reason of liability imposed by law" could mean, for example:  (1) only after a judgment has been entered; (2) only after all appeals are exhausted and the verdict stands; (3) only after efforts to execute judgment have begun; (4) the occurrence upon which the liability is based (i.e., the death of Egger); or (5) only after the tender of primary coverage. . . .  This demonstrates the ambiguity of the clause that Gulf cites as support for its argument that this term means the jury verdict.

> We have stated that where ambiguity exists in the interpretation of policy language, the ambiguity must be construed in favor of coverage.

*Egger v. Gulf Insurance. Co*., 903 A.2d at 1224-26 (citations omitted) (emphasis omitted).

In *In re Western Asbestos Company*, 313 B.R. 832, 858 (Bankr.N.D.Cal. 2003), the bankruptcy court concluded that under 11 U.S.C. §1123(a)(5), policies or rights thereunder may be transferred to an asbestos personal injury trust, whether or not state law would permit assignment.

In a subsequent opinion in the same case, *In re Western Asbestos Co*., 313 B.R. 456, 459 (Bankr.N.D.Cal. 2004), *aff'd* 2004 WL 1944792 (N.D.Cal. April 16, 2004), the court held that, with respect to causes of action that were transferred to the trust pursuant to the plan of reorganization, the trust was designated as a successor to the debtors and a representative of the chapter 11 estates.  The court noted that the trust was authorized as a matter of law to appear in and act for debtors in pending actions and to pursue causes of action for the benefit of holders of asbestos related claims.  The court found that under §1123(b)(3)(B), on the effective date of the plan,

> the Trust shall be vested with and have the right to enforce against any Entity any and all of such causes of action, with the proceeds of the recovery of any such actions related to insurance for

> Asbestos Related Claims (including, without limitation, the
> Coverage Litigation) to be paid to the respective Debtor . . . .

313 B.R. at 459.  The court concluded that the debtors' insurance policies, rights under, and

proceeds of those polices could be vested in the trust under §1123(a)(5)(B), notwithstanding

state law or contractual provisions to the contrary.  *Id.* at 462.  The court further ruled that the

vesting of insurance rights in the trust "shall neither diminish nor impair the enforceability of

any of the Asbestos Insurance Policies against a party that is not a Released Party."  *Id.*

Likewise, it would not expand rights.  *Id.*  We agree with this analysis and, inasmuch as the plan

provisions at issue here accord the same result, adopt it in this case.

In *In re Kaiser Aluminum Corp.*, 343 B.R. 88 (D.Del. 2006), in affirming this court, the

District Court for the District of Delaware permitted the debtor to assign insurance proceeds to a

personal injury trust pursuant to 11 U.S.C. §541(c)(1) and 11 U.S.C. §1123(a) "which expressly

provides for the preemption of nonbankruptcy law."  *Id.* at 95.  In *Kaiser* the nonbankruptcy law

addressed was that purporting to limit or restrict a debtor's rights to assign interests in insurance

policies.  The District Court relied upon *Combustion Engineering*, 391 F.3d at 218-19, n.27, in

determining that §541(c)(1) and §1123(a) preempt anti-assignment clauses in insurance policies.

*Kaiser, supra*, 343 B.R. at 95 ("Section 541(c)(1) and Section 1123(a)(5)(B) of the Bankrutpcy

Code expressly permits [sic] the assignment of a debtor's interest in insurance policies to a trust

or other entity, even if the subject insurance policies contain a prohibition of assignment.")

*Global Industrial Technologies, Inc.*, Case No. 02-21626, Memorandum Order at 7, Doc No.

7703, ("The anti-assignment clauses in the insurance policies are preempted by the Bankruptcy

Code").

Thus, the insurance policies are property of these estates by virtue of §541 and their

transfer to the §524(g) trust is permitted notwithstanding anti-assignment clauses in or

incorporated in the policies or applicable state law by virtue of §1123(a)(5) and §541(c)(1), as

applicable.

Objecting Insurers raised a number of additional issues, which we address below:

> **1.  Objecting Insurers contend that there is a "strong presumption against preemption"[23] and that 1123(a)(5) cannot be interpreted to extend beyond "the limited preemption afforded by §§363(l) and 1142(a)."[24]**

Objecting Insurers argue that in determining the scope of preemption under §1123(a)(5)

there is a strong "presumption against preemption" as articulated in *Medtronic, Inc. v. Lohr*, 518

U.S. 470, 485 (1996).  However, this premise does not change the primacy of the language of

§1123(a)(5).  The court in *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001),

explained that the presumption against preemption "can be overcome where . . . Congress has

made clear its desire for pre-emption."[25]  In *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18

(1993), the Supreme Court noted that it is well-recognized that the term "notwithstanding" as

found in §1123(a) expresses a clear statement of intent "to supercede all other laws."  Despite the

---

[23] Joint Submission of Plan Objectors' Post-Trial Briefs In Opposition To Confirmation Of Fourth Amended Joint Plan Of Reorganization, Doc. No. 13182, at Tab 9b-5.

[24] Objections of Certain Underwriters at Lloyd's, London and Certain London Market Companies to Fourth Amended Joint Plan of Reorganization, Doc. No. 12576, at 16.  *See also* Joint Submission of Plan Objectors' Post-Trial Briefs In Opposition To Confirmation Of Fourth Amended Joint Plan Of Reorganization, Doc. No. 13182, at Tab 9b-8.

[25] *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996)("As a result, any understanding of the scope of a pre-emption statute must rest primarily on 'a fair understanding of congressional purpose' . . . . Congress' intent, of course, primarily is discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it").

plain meaning of §1123(a)(5), which this court is bound to consider first and foremost, [26]

objecting Insurers ask the court to look past the plain meaning of §1123(a)(5) and examine the

other provisions of the Bankruptcy Code as a reference for a statutory framework.  Specifically,

they ask the court to look to §1142 and §363(l) of the Bankruptcy Code to limit the scope of

preemption under §1123(a)(5).

The Objecting Insurers rely on *Pacific Gas and Electric Company v. California Dept. of

Toxic Substances Control*, 350 F.3d 932 (9th Cir. 2003), to argue that §1123(a)(5) preempts

applicable nonbankruptcy law only insofar as such law relates to a debtor's financial condition.

*Pacific Gas* imports the words "relating to financial condition" from §1142(a) into §1123(a)(5).

The holding in *Pacific Gas* squarely conflicts with the rationale of the Court of Appeals for the

Third Circuit and other courts which have considered the issue.  *See Combustion Engineering*,

391 F.3d at 219 n. 27 (interpreting §1123(a)(5) without limiting applicable nonbankruptcy law to

laws relating to financial condition); *Kaiser Aluminum*, 343 B.R. at 93 (same).  This court, of

course, is bound by pronouncements of the Court of Appeals for the Third Circuit, not the Ninth,

and, therefore, follows *Combustion Engineering*.[27]

---

[26] *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

[27] We note that the language of each of §363(l), §1142(a) and §1123(a)(5) varies.
Section 363(l) speaks to "insolvency or financial condition."  Section 1142(a) speaks only of
"financial condition."  Section 1123(a)(5) mentions neither insolvency nor financial condition.
Inasmuch as the provisions address different time periods in the life cycle of a bankrutpcy
(§363(l) in Chapter 3 Subchapter IV Administrative Powers; §1123(a) in Chapter 11, Subchapter
II - The Plan; §1142(a) in Chapter 11, Subchapter III - Post Confirmation Matters), we think it
likely that Congress intended this difference in statutory language.  Mindful of *Lamie v. United
States Trustee*, 540 U.S. 526 (2004) ("It is well established that 'when the statute's language is
plain, the sole function of the courts - at least where the disposition required by the text is not
absurd - is to enforce it according to its terms'")(citations omitted), we will rely upon

(continued...)

18

Objecting insurers argue that §363(l) is "the governing statute" and directly applicable to the assignment of contractual rights arising under non-executory contracts pursuant to a plan. However, this argument, far from presenting a statutory framework, takes the Bankruptcy Code out of its logical sequence. As explained above, §541 defines what is property of the estate, §1123 delineates what a plan can provide, and §1129 lays out the requirements for plan confirmation. Section 363 is an administrative provision which gives the trustee authority to deal with property of the estate notwithstanding certain *ex post facto* clauses based upon the insolvency or financial condition of the debtor. Not all anti-assignment provisions are based upon a debtor's insolvency or financial condition. Thus, to do as we are asked would re-write the statute and modify the meaning of §1123 in such a way that it becomes superfluous. This, we may not do. *TRW, Inc. V. Andrews*, 534 U.S. 19, 31 (2001)("It is a cardinal principle of statutory construction that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant'") (citation omitted). *Accord Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Moreover, Objecting Insurers provide no authority for their contention that §363(l) should be fashioned to limit the use made by this plan of §1123(a)(5). However, a number of

---

[27](...continued)

§1123(a)(5) –a clearly written provision– as written without the need to incorporate words from other sections that Congress chose not to use in this one. We further note that §363(l) parrots §541(c)(1)(B), which nullifies most restrictions on the debtor's interests in property by, *inter alia*, agreement or applicable non-bankruptcy law conditioned upon the insolvency or financial condition of the debtor. Congress, therefore, made use of different words in different statutory sections. A fundamental premise of statutory construction is that when Congress uses particular language in one section of a statute but omits it in another, its actions are purposeful and intentional. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994); *Russello v. U.S.*, 464 U.S. 16, 23 (1983).

cases demonstrate the appropriate statutory framework (i.e., under §§524(g), 541, 1123, and 1129) for the assignment of insurance proceeds to a §524(g) trust, pursuant to a plan. *See, e.g.*, *In re Combustion Engineering*, 391 F.3d 190 (3d Cir. 2004) (finding that assignment of insurance proceeds to §524(g) trust notwithstanding any anti-assignment provisions in subject insurance policies is valid and enforceable pursuant to §541 and §1123(a)(5)). *Accord In re Kaiser Aluminum Corp.*, 343 B.R. 88 (D.Del. 2006); *In re Western Asbestos Company*, 313 B.R. 832, 857-8 (Bankr.N.D.Cal. 2003). This plan is in accord with that precedent.

In arguing for limiting the scope of preemption under §1123(a), the Objecting Insurers suggest that "[u]nder the Proponents' theory of section 1123(a)(5)(B), a bankrupt debtor with no use for a particular insurance policy because it has no liabilities could sell its policy to any third party, including a party with liabilities but no insurance."[28] The argument ignores the context of the contested assignment. Section 524(g) of the Bankruptcy Code creates a new form of entity: a trust to which asbestos liabilities are channeled and which addresses and pays those liabilities. A §524(g) trust is not a state law trust and likewise is not a creation of private agreement. Rather, a §524(g) trust is one whose existence is authorized and whose contours are delineated by the Bankruptcy Code. Such a trust is the successor to the debtor's asbestos liabilities that are channeled to that trust, and those liabilities may include insured asbestos liabilities, inasmuch as

---

[28] Plan Objectors' Post Trial Brief, Doc. No. 13182, Tab 9a, at 5; *see also* Plan Objectors' Post Trial Brief, Doc. No. 13182, Tab 9b, at 10 (arguing that the Plan Supporters' proposed interpretation of §1123(a)(5)(B) could be used "to amend a corporation's charter, contrary to state law, to provide that its purpose is to engage in the sale of illegal narcotics"). This argument ignores the premise that §1123(a)(5)(B) will not be used to permit an entity to engage in a criminal enterprise. *Cf.* §1129(a)(3)(plan shall be confirmed only if, *inter alia*, it has been proposed "in good faith and not by any means forbidden by law."

§524(g) clearly contemplates the transfer of insured liabilities to the trust.[29]  Insurance policies covering asbestos liabilities are assets held by a debtor.  Just as insured asbestos liabilities may be transferred to the trust, so may the corresponding assets, the insurance policies, proceeds, or policy rights, as applicable in any given Plan, that stand to cover those liabilities.[30]  In this context, the logic of the Bankruptcy Code, in §1123(a)(5)(B), which permits transfers of property of the estate (here, insurance policies or rights to proceeds thereunder) from a debtor to the successor vehicle to the debtor (the §524(g) trust), is unassailable.

### 2.  Objecting Insurers contend that §1123(a)(5) does not preempt private contracts.

Objecting Insurers also argue that because the language of §1123(a)(5) does not specifically refer to contracts, and other provisions of the Bankruptcy Code do, §1123(a)(5)

---

[29]  Section 524(g)(2)(B) provides in relevant part:  "The requirements of this subparagraph are that--
(i) the injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization–
> (I) is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;
> (II) is to be funded in whole or in part by the securities of 1 or more debtors involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends; . . .
> (IV) is to use its assets or income to pay claims and demands . . .".
11 U.S.C. §524(g)(2)(B).

[30]  Section 524(g)(2)(B)(i)(IV) requires the debtor to "use its assets or income to pay claims and demands."

cannot preempt private contact rights.  However, both the express language of §541(c)(1) and

courts construing that text have held that §541(c)(1) prohibits a contractual restriction on the

rights of a debtor to transfer or assign its interests in bankruptcy and §1123(a)(5) permits the

transfer of the property to a §524(g) trust.  Thus, §1123(a)(5) provides for the adequate

implementation of the plan.  *See In re Combustion Engineering*, 391 F.3d 190, 219 n. 27 (3d Cir.

2004) (insurance contracts);  *In re Kaiser Aluminum Corp.*, 343 B.R. 88, 95 (D.Del. 2006)

(insurance policies);  *In re FCX, Inc.*, 853 F.2d 1149, 1154-55 (4th Cir. 1988) (bylaws of

cooperative)*, cert. denied sub nom. Universal Cooperatives, Inc. v. FCX, Inc.*, 489 U.S. 1011

(1989).  The objection, therefore, is not well founded.[31]


### 3.  *Objecting Insurers contend that the Asbestos Insurance Policies are Executory Contracts and therefore subject to §365.*

The Objecting Insurers argue that the Asbestos Insurance Policies are executory, and

therefore fall under the restrictions on assignment contained in §365 of the Bankruptcy Code.

However, "[c]ourts have consistently held that insurance policies where the policy coverage

period has expired prior to the insured's bankruptcy are not executory contracts despite ongoing

obligations of the debtor."  *Beloit Liquidating Trust v. United Insurance. Co.*, 287 B.R. 904, 906

(N.D. Ill. 2002).  *See also In re CVA General Contractors, Inc.*, 267 B.R. 773, 778 (Bankr. W.D.

Tex. 2001) (holding that the insurance policy was not a proper subject for §365 analysis because

it had expired as of the petition date).  The court in *Columbia Cas. Co. v. Federal Press Co.*, 104

---

[31]  The court notes that the Supreme Court has ruled in another context that Congress has "reshaped debtor and creditor rights in marked departure from state law."  *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 964 (1997).

B.R. 56, 66 (Bankr. N.D. Ind. 1989), explained that even though the terms and conditions of the policies may still be in effect for the periods covered by the policies, the executory period for the contract ends when the last effective date of the policies has passed. All the policy periods under the Asbestos Insurance Policies in this case have expired. In the case at bench, the last known policy period of any of the Asbestos Insurance Policies ended in 1991, long before the petition date.

Additionally, all premiums under such policies were paid prior to the petition date. The Court of Appeals for the Third Circuit has adopted the Countryman definition of executory contracts, which defines an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contact are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (*quoting* Countryman, *Executory Contracts in Bankruptcy, Part 1*, 57 Minn. L. Rev. 439, 460 (1973); *In re Exide Technologies*, 340 B.R. 222, 229 (Bankr. D. Del. 2006). Under the Countryman definition courts have recognized that where one of the parties to the insurance policy has fulfilled the central agreement to such contract, such as the obligation of the insured to pay the premium in exchange for the insurer's defense and payment of indemnity claims against the insured, the contract is no longer executory. *See In re Surfside Resort and Suites, Inc.*, 344 B.R. 179, 187 (Bankr. M.D. Fla. 2006) (finding that where the premium had been paid in full prepetition, the insurance policy was not executory under the Countryman definition); *In re CVA General Contractors, Inc.*, 267 B.R. 773, 779 (Bankr. W.D. Tex. 2001) (stating that when the "sole basis" for finding an insurance policy to be an executory contract, the continuing

obligation to make premium payments, had been fulfilled, the insurance policy is not executory); *In re Firearms Import and Export Corp.*, 131 B.R. 1009, 1013 (Bankr. S.D. Fla. 1991) (holding that the insurance policy was not an executory contract because the debtor had already paid the premiums in full). The payment of policy premiums prior to the petition date constitutes substantial compliance with the policy and renders the contracts non-executory in nature.

The Objecting Insurers argue that, even though the premiums have been paid, the Debtors' ongoing obligations of cooperation, retrospective premiums, deductibles and notice make the policies executory. To the contrary, courts have found that such ministerial obligations do not transform an otherwise non-executory insurance policy into an executory contract. *See In re Grace Indus. Inc.*, 341 B.R. 399, 402-03 (Bankr. E.D.N.Y. 2006) (stating that an insurance policy was not an executory contract despite the debtor's duties to pay retrospective premiums and deductibles/self-insurance); *In re Vanderveer Estates Holding, LLC*, 328 B.R. 18, 25-26 (Bankr. E.D.N.Y. 2005) (stating that an insurance policy was not an executory contract despite the debtor's duty to pay a deductible); *In re Wisconsin Barge Line, Inc.*, 76 B.R. 695, 697 (Bankr. E.D. Mo. 1987) (holding that the contract was not executory despite the debtor's duties to pay retroactive premiums).

At the confirmation hearing, Objecting Insurers devoted a significant portion of their arguments in favor of designating the Asbestos Insurance Policies as executory contracts to concerns over the obligations of cooperation and notice. These concerns mirrored those in *In re Sudbury, Inc.*, 153 B.R. 776, 779-80 (Bankr. N.D. Ohio 1993), where the court held that the insurance policy was not an executory contract despite the debtor's duties with respect to retroactive premiums and the cooperation clause, including notice obligations, providing

24

information demanded by the insurer, cooperating in the defense of claims, consent to settlements and preservation of the insurers' right to subrogation, because such duties were ministerial.  Failure of cooperation with respect to a claim establishes only that an insurer may have a defense to payment of that claim and would not affect an insurer's obligation regarding other claims.  Further, the court held that denying executory status to the policies in issue would not impact the rights or remedies of the insurer.

This court finds that, because the premiums are paid, the policy coverage periods have expired, and the remaining obligations of the insureds are ministerial, the Asbestos Insurance Policies are non-executory contracts and therefore, do not fall under §365 of the Bankruptcy Code.[32]

**CONCLUSION**

For the reasons discussed, the court will overrule the objections of the Objecting Insurers and the Certain Underwriters at Lloyds, London and London Market Companies regarding assignment and preemption on the ground that the assignment of rights in certain insurance policies to the Asbestos Trust, as provided in part by Section 4.3 of the Plan, is valid and enforceable under §524(g), §541(c)(1), §1123(a)(5)(B) and §1129(a)(1) of the Bankruptcy Code, and that the Bankruptcy Code preempts any anti-assignment contractual provisions and applicable state law.

An appropriate order will be entered.

---

[32]  Debtors have acknowledged their remaining ministerial obligations under the policies and have agreed to perform them.  If they fail, all coverage defenses are preserved pursuant to the insurance neutrality provisions described, *infra*.

DATE:   March _____ 19 ____, 2008

Judith K. Fitzgerald
Judith K. Fitzgerald
United States Bankruptcy Judge

jmd

cc:

James F. Conlan
Kevin T. Lantry
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Laura Davis Jones
James E. O'Neil
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705

OFFICE OF THE UNITED STATES TRUSTEE
844 North King Street
Room 2207, Lockbox 35
Wilmington, Delaware 19801

Charlene D. Davis
Eric M. Sutty
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801

Marla R. Eskin
Kathleen Campbell Davis
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, Delaware 19801

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, New York 10052-3500

Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

Ian Connor Bifferato
BIFFERATO GENTILOTTI
800 N. King Street
Wilmington, Delaware 19801

David Heroy
Bruce E. Lithgow
BAKER & McKENZIE LLP
One Prudential Plaza
130 East Randolph Drive
Chicago, Illinois 60601

Steven M. Fuhrman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017

Mark D. Collins
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899

Edwin J. Harron
James L. Patton, Jr.
Maribeth L. Minella
YOUNG CONAWAY STARGATT & TAYLOR LLP
 The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

Brian L. Kasprzak
MARKS, O'NEILL, O'BRIEN AND
COURTNEY, P.C.
913 North Market Street, Suite 800
Wilmington, Delaware 19801

Mark D. Plevin
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595

Sean J. Bellew
COZEN O'CONNOR
1201 N. Market Street
Suite 1400
Wilmington, DE 19801

Michael S. Davis
Jantra Van Roy
ZEICHNER ELLMAN & KRUSE LLP
575 Lexington Avenue
New York, New York 10022

Ngoc H. Lam
JACKSON & CAMPBELL, P.C.
1120 Twentieth Street, N.W.
South Tower
Washington, DC 20036-3437

James S. Yoder
WHITE AND WILLIAMS LLP
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709

Elit R. Felix, II
MARGOLIS EDELSTEIN
The Curtis Center, 4th Floor
601 Walnut Street
Philadelphia, PAl 9 1 06- 3304

Michael W. Yurkewicz
KLEHR, HARRISON, HARVEY
BRANZBURG AND ELLERS LLP
919 Market St., Suite 1000
Wilmington, DE 19801

Craig Goldblatt
Nancy L. Manzer
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

William J. Bowman
James P. Ruggeri
Edward B. Parks, II
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004

Neal J. Levitsky
Seth A. Niederman
FOX ROTHSCHILD LLP
Citizen's Bank Center
919 North Market Street, Suite 1300
Wilmington, DE 19899

Stuart D. Rosen
G. Eric Brunstad, Jr.
BINGHAM McCUTCHEN LLP
One State Street
Hartford, Connecticut 06103-3178

Rheba Rutkowski
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

Christopher P. Simon
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380

John J. Dillon
Anthony S. Fernandez
HAMILTON ALTMAN CANALE
& DILLON, LLC
4600 East-West Highway, Suite 201
Bethesda, Maryland 20814

John D. Demmy
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

Leonard P. Goldberger
1818 Market Street, 29th Floor
Philadelphia, PA 19103

Richard W. Riley
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246

Russell W. Roten
DUANE MORRIS LLP
633 W. 5th Street, Suite 4600
Los Angeles, CA 90071

Eileen T. McCabe
MENDES & MOUNT LLP
750 Seventh Avenue
New York, New York 10019-6829

Michael A. Shiner
TUCKER ARENSBERG, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| _____ | |
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 01-10578 (JKF) |
| FEDERAL-MOGUL GLOBAL | ) (Jointly Administered) |
| INC., T&N LIMITED, et al., | ) |
| | ) Related Docket Nos. 13182, 582593566, |
| | ) 13499, 13660, 13671, 13672, and 13674.. |
| | ) |
| Debtors. | ) |
| _____ | ) |

**ORDER**

**AND NOW**, this ___19th___ day of March, 2008, for the reasons stated in the foregoing

Memorandum Opinion, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the

assignment of rights in certain insurance policies to the asbestos trust, as provided in part by

Section 4.3 of the Fourth Amended Joint Plan of Reorganization For Debtors and Debtors-In-

Possession (As Modified), Doc. No. 13360, is valid and enforceable pursuant to §§524(g),

541(c)(1), 1123(a)(5)(B) and §1129(a)(1) of the Bankruptcy Code notwithstanding anti-

assignment provisions in or incorporated in the policies and applicable state law. The Objections

of the Objecting Insurers and of Certain Underwriters at Lloyds, London and London Market

Companies, all as defined in the Memorandum Opinion, are **OVERRULED**.

It is **FURTHER ORDERED** that counsel for Debtors shall immediately serve a copy of

this Memorandum Opinion and Order on all parties on the current Service List and any other

parties in interest and shall file proof of service forthwith.

_Judith K. Fitzgerald_

jmd

Judith K. Fitzgerald
United States Bankruptcy Judge

1

cc:

James F. Conlan
Kevin T. Lantry
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Laura Davis Jones
James E. O'Neil
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705

OFFICE OF THE UNITED STATES TRUSTEE
844 North King Street
Room 2207, Lockbox 35
Wilmington, Delaware 19801

Charlene D. Davis
Eric M. Sutty
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801

Marla R. Eskin
Kathleen Campbell Davis
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, Delaware 19801

Elihu Inselbuch
CAPLIN & DRYSDALE, CHARTERED
375 Park Avenue, 35th Floor
New York, New York 10052-3500

Peter Van N. Lockwood
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

2

Ian Connor Bifferato
BIFFERATO GENTILOTTI
800 N. King Street
Wilmington, Delaware 19801

David Heroy
Bruce E. Lithgow
BAKER & McKENZIE LLP
One Prudential Plaza
130 East Randolph Drive
Chicago, Illinois 60601

Steven M. Fuhrman
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017

Mark D. Collins
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899

Edwin J. Harron
James L. Patton, Jr.
Maribeth L. Minella
YOUNG CONAWAY STARGATT & TAYLOR LLP
 The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391

Brian L. Kasprzak
MARKS, O'NEILL, O'BRIEN AND
COURTNEY, P.C.
913 North Market Street, Suite 800
Wilmington, Delaware 19801

Mark D. Plevin
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595

Sean J. Bellew

3

COZEN O'CONNOR
1201 N. Market Street
Suite 1400
Wilmington, DE 19801


Michael S. Davis
Jantra Van Roy
ZEICHNER ELLMAN & KRUSE LLP
575 Lexington Avenue
New York, New York 10022


Ngoc H. Lam
JACKSON & CAMPBELL, P.C.
1120 Twentieth Street, N.W.
South Tower
Washington, DC 20036-3437


James S. Yoder
WHITE AND WILLIAMS LLP
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709


Elit R. Felix, II
MARGOLIS EDELSTEIN
The Curtis Center, 4th Floor
601 Walnut Street
Philadelphia, PAl 9 1 06- 3304


Michael W. Yurkewicz
KLEHR, HARRISON, HARVEY
BRANZBURG AND ELLERS LLP
919 Market St., Suite 1000
Wilmington, DE 19801


Craig Goldblatt
Nancy L. Manzer
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006


William J. Bowman

4

James P. Ruggeri
Edward B. Parks, II
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004


Neal J. Levitsky
Seth A. Niederman
FOX ROTHSCHILD LLP
Citizen's Bank Center
919 North Market Street, Suite 1300
Wilmington, DE 19899

Stuart D. Rosen
G. Eric Brunstad, Jr.
BINGHAM McCUTCHEN LLP
One State Street
Hartford, Connecticut 06103-3178

Rheba Rutkowski
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110

Christopher P. Simon
913 North Market Street, 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380

John J. Dillon
Anthony S. Fernandez
HAMILTON ALTMAN CANALE
& DILLON, LLC
4600 East-West Highway, Suite 201
Bethesda, Maryland 20814

John D. Demmy
STEVENS & LEE, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE 19801

Leonard P. Goldberger

1818 Market Street, 29th Floor
Philadelphia, PA 19103

Richard W. Riley
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246

Russell W. Roten
DUANE MORRIS LLP
633 W. 5th Street, Suite 4600
Los Angeles, CA 90071

Eileen T. McCabe
MENDES & MOUNT LLP
750 Seventh Avenue
New York, New York 10019-6829

Michael A. Shiner
TUCKER ARENSBERG, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

UNITED STATES BANKRUPTCY COURT
*DISTRICT OF DELAWARE*

**APPEAL TRANSMITTAL SHEET**

Case Number: <u>01-10578-JKF</u>    ●BK    ○AP
　If AP, related BK Case Number: _____

Title of Order Appealed:
<u>Memorandum Opinion and Order regarding Assignment and Preemption Issue</u>
　　　　Docket Number: <u>14237</u>　　　　Date Entered: <u>3/20/08</u>

Item Transmitted:　　　●Notice of Appeal　　　○Motion for Leave to Appeal
　　　　　　　　　　　○Amended Notice of Appeal　　○Cross Appeal
　　　　　　　　　Docket Number: <u>582593636</u>　　　Date Filed: <u>3/27/08</u>

*Appellant/Cross Appellant:　　　　　　*Appellee/Cross Appellee
<u>London Market Insurers</u>　　　　　　　　<u>Futures Representative</u>

Counsel for Appellant:　　　　　　　Counsel for Appellee:
<u>Richard W. Riley</u>　　　　　　　　　<u>Edwin J. Harron</u>
<u>Duane Morris LLP</u>　　　　　　　　　<u>Young, Conaway Stargatt & Taylor, LLP</u>
<u>1100 North Market Street</u>　　　　　　<u>The Brandywine Building</u>
<u>Suite 1200</u>　　　　　　　　　　　　<u>1000 West Street, 17th Floor</u>
<u>Wilmington, DE 19801-1246</u>　　　　　<u>Wilmington, DE 19801-0391</u>

*If additional room is needed, please attach a separate sheet.*

Filing Fee paid?　●Yes　○No

IFP Motion Filed By Appellant?　○Yes　●No

Have Additional Appeals to the Same  Order been Filed?　●Yes　○No
　If so, has District Court assigned a Civil Action Number?　○Yes　●No　　Civil Action #_____

Additional Notes:
_____

<u>4/22/08</u>　　　　　　　　　　　　By: <u>Nancy L'Heureux</u>
Date　　　　　　　　　　　　　　Deputy Clerk

_____
　　　　　　　　　　　　　　　　*For Use by U.S. Bankruptcy Court*

Bankruptcy Court Appeal (BAP) Number: <u>BAP-08-14</u>
7/6/06