# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| FEDERAL-MOGUL GLOBAL INC., T&N LIMITED, *et al.*, | ) ) ) |
|  | ) |
| Reorganized Debtors. | ) ) |
|  | ) |
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, *et. al.*, | ) ) ) |
|  | ) |
| Appellants, | ) ) |
|  | ) |
| v. | ) ) |
|  | ) |
| FEDERAL-MOGUL GLOBAL INC., *et al.*, | ) ) |
|  | ) |
| Appellees. | ) ) |

Chapter 11

Bankruptcy Case No. 01-10578

Civil Action Nos. 08-0229 and 08-0230

Judge Joseph H. Rodriguez

## <u>BRIEF OF APPELLEE REORGANIZED DEBTORS</u>

SIDLEY AUSTIN LLP
James F. Conlan
Jeffrey C. Steen
Kevin T. Lantry
Kenneth P. Kansa
William A. Evanoff
One South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Scotta E. McFarland (No. 4184)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

*Counsel for Appellee Reorganized Debtors*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................ 1

Overview ..................................................................................................................... 2

Factual Background and Summary of the Plan Confirmation Process ...................... 4

LMI's Argument Regarding the Plan's Compliance with Section 524(g) of the
    Bankruptcy Code is Barred as a Matter of Law .................................................. 11

Conclusion ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

STATUTES

11 U.S.C. § 524(g) .................................................................................................... passim

11 U.S.C. § 524(g)(2)(B)(i)(II) ...........................................................6, 10, 11, 13, 14

11 U.S.C. § 524(g)(2)(B)(i)(III)..........................................................................................6

11 U.S.C. § 541(c)(1)............................................................................................................11

11 U.S.C. § 1123(a)(5)(B) ....................................................................................................11

11 U.S.C. § 1129(a)(1)...........................................................................................................11


CASES

Fleck v. KDI Sylvan Pools, Inc.,
    981 F.2d 107 (3d Cir. 1992).............................................................................14, 15

In re Continental Airlines, Inc. (Air Line Pilots Ass'n, Int'l v. Continental Airlines, Inc.),
    145 B.R. 404 (D. Del. 1992) .......................................................................................12

In re Continental Airlines, Inc. (Eastern Pilots Merger Committee v. Continental Airlines,
    Inc.),
    279 F.3d 226 (3d Cir. 2002).......................................................................................12

Stoll v. Gottlieb,
    305 U.S. 165 (1938)......................................................................................................12

**Preliminary Statement**

Appellee Federal-Mogul Corporation ("FM") and the other reorganized debtors[1] in the

captioned chapter 11 cases (collectively, as reorganized, the "Reorganized Debtors"),

respectfully submit this brief in support of affirmance of the Bankruptcy Court's judgment that

the assignment of certain insurance rights to a Section 524(g) trust pursuant to the Debtors'

confirmed plan of reorganization was valid and authorized under the United States Bankruptcy

Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), notwithstanding any purported anti-

assignment restrictions in the relevant insurance policies or otherwise applicable State law to the

---

[1]     The U.S. Debtors (collectively, the "U.S. Debtors") are Carter Automotive Company, Inc.,
Federal-Mogul Corporation, Federal-Mogul Dutch Holdings Inc., Federal-Mogul FX, Inc., Federal-Mogul
Global Inc., Federal-Mogul Global Properties, Inc., Federal-Mogul Ignition Company, Federal-Mogul
Machine Tool, Inc., Federal-Mogul Mystic, Inc., Federal-Mogul Piston Rings, Inc., Federal-Mogul
Powertrain, Inc., Federal-Mogul Products, Inc., Federal-Mogul Puerto Rico, Inc., Federal-Mogul U.K.
Holdings, Inc., Federal-Mogul Venture Corporation, Federal-Mogul World Wide, Inc., Felt Products
Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings,
Inc., McCord Sealing, Inc., and T&N Industries Inc.
       The United Kingdom Entities to which the Plan applies (collectively, the "U.K. Debtors") are AE
Piston Products Limited, Aeroplane & Motor Aluminium Castings Limited, Ashburton Road Services
Limited, Brake Linings Limited, Duron Limited, Edmunds, Walker & Co. Limited, Federal-Mogul
Aftermarket UK Limited, Federal-Mogul Bradford Limited, Federal-Mogul Bridgwater Limited, Federal-
Mogul Camshaft Castings Limited, Federal-Mogul Camshafts Limited, Federal-Mogul Engineering
Limited, Federal-Mogul Eurofriction Limited, Federal-Mogul Friction Products Limited, Federal-Mogul
Global Growth Limited, Federal-Mogul Ignition (U.K.) Limited, Federal-Mogul Powertrain Systems
International Limited, Federal-Mogul Sealing Systems (Cardiff) Limited, Federal-Mogul Sealing Systems
(Rochdale) Limited, Federal-Mogul Sealing Systems (Slough) Limited, Federal-Mogul Sealing Systems
Limited, Federal-Mogul Shoreham Limited, Federal Mogul Sintered Products Limited, Federal-Mogul
Systems Protection Group Limited, Federal-Mogul Technology Limited, Federal Mogul U.K. Limited,
Ferodo Caernarfon Limited, Ferodo Limited, Fleetside Investments Limited, F-M UK Holding Limited,
Friction Materials Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, J.W.
Roberts Limited, Lanoth Limited, Newalls Insulation Company Limited, TAF International Limited,
T&N Holdings Limited, T&N International Limited, T&N Investments Limited, T&N Limited, T&N
Materials Research Limited, T&N Piston Products Group Limited, T&N Properties Limited, T&N Shelf
Eighteen Limited, T&N Shelf Nineteen Limited, T&N Shelf One Limited, T&N Shelf Seven Limited,
T&N Shelf Three Limited, T&N Shelf Twenty Limited, T&N Shelf Twenty-One Limited, T&N Shelf
Twenty-Six Limited, TBA Belting Limited, TBA Industrial Products Limited, Telford Technology
Supplies Limited, The Washington Chemical Company Limited, Turner & Newall Limited, Turner
Brothers Asbestos Company Limited, and Wellworthy Limited.  Unlike all the other U.K. Debtors, T&N
Investments Limited is a Scottish rather than English company and commenced administration in
Scotland in April 2002.  Certain additional U.K. Affiliates of the U.S. Debtors and U.K. Debtors
commenced chapter 11 cases but were not subjects of the Plan.

contrary. The Reorganized Debtors join in the substance of the legal arguments set forth in the

appellee briefs of the Asbestos Claimants Committee (the "ACC") and the Future Claimants

Representative (the "FCR") that have been or will be filed with this Court. However, in order to

clarify the record, the Reorganized Debtors hereby submit this brief primarily to apprise the

Court of the preclusive effects of the confirmation of the Debtors' plan and, in light of those

effects and the consensual dual order procedure agreed to below by all parties to these appeals, to

make clear that the detour of the appellants Certain Underwriters at Lloyd's, London, and

Certain London Market Companies (collectively, "LMI") into the plan's compliance with

Section 524(g) of the Bankruptcy Code is barred as a matter of law and consequently should be

disregarded by this Court.

### Overview

At the outset, it is important to recognize that, after over six years in bankruptcy, the

Reorganized Debtors consensually emerged from chapter 11, with the support of their Plan

Proponents[2] and other constituents, on December 27, 2007. In the wake of months of contested

confirmation hearings and extraordinary negotiations and legal proceedings, on November 8,

2007, the Bankruptcy Court entered the Order Confirming Fourth Amended Joint Plan of

Reorganization for Debtors and Debtors-in-Possession (as Modified) (D.I. 13674[3], the

"Confirmation Order") and the corresponding Findings of Fact and Conclusions of Law

Regarding Confirmation of Fourth Amended Plan of Reorganization for Debtors and Debtors-in-

Possession (as Modified) (D.I. 13672, the "Findings and Conclusions") on a wholly consensual

basis. This Court affirmed the Confirmation Order and adopted the Findings and Conclusions on

---

[2] The Plan Proponents are the Debtors, the Unsecured Creditors Committee (the "UCC"), the Asbestos Claimants Committee, the Future Claimants Representative, the Administrative Agent and the Equity Committee. Other capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Fourth Amended Plan (as defined below).

[3] "D.I." refers to index numbers on the docket of the Bankruptcy Court, unless otherwise stated.

November 13, 2007 (D.I. 13698, the "Affirmance Order"). No party appealed, nor sought to

rehear, reconsider, vacate or stay, the Bankruptcy Court's Confirmation Order, its Findings and

Conclusions or this Court's Affirmance Order.

Accordingly, it is undisputed that the Confirmation Order is a final and non-appealable

order, and the terms of that order and the Debtors' confirmed Fourth Amended Joint Plan of

Reorganization (as Modified) (D.I. 13674, Exhibit A thereto, the "Fourth Amended Plan" or the

"Plan") are binding upon the Debtors, their creditors, their interest holders and all other parties in

interest, including each of the appellants in the subject appeals. Once the Confirmation Order

became final and non-appealable, the Plan became effective, and the Debtors successfully

emerged from bankruptcy, on December 27, 2007. The Plan was then substantially

consummated, and substantially all of the transactions and distributions contemplated by the Plan

have been implemented in reliance upon the finality of the Confirmation Order.

As more fully described in the appellee brief of the FCR, in order to facilitate the

Debtors' emergence from chapter 11 prior to the scheduled expiration of the Debtors' exit

financing commitment on December 31, 2007, in October of 2007, the appellees, the other Plan

Proponents, the appellants and certain other non-appealing insurers consensually agreed to a

process – which was approved by the Bankruptcy Court – pursuant to which the adjudication of

the limited federal asbestos insurance assignment and preemption question presented in these

appeals would be separate and independent from, and mutually independent of, the confirmation

of the Debtors' Plan. Through two sets of stipulations approved by the Bankruptcy Court, the

appealing insurers expressly agreed that the Debtors' Plan could be confirmed and go effective

regardless of whether, when or how the separate federal asbestos insurance assignment and

preemption issue might ultimately be resolved.

In light of these developments, the Reorganized Debtors consequently wish to make clear that the limited federal question presented in, and the ultimate outcome of, these appeals shall have no effect on the terms and provisions of the final and non-appealable Confirmation Order, the Affirmance Order, the Findings and Conclusions and the Confirmed Plan. Those important matters have been fully and finally adjudicated, are binding upon all parties in interest, and may not be altered, reopened, collaterally attacked, challenged or otherwise reviewed in these appeals. Any insinuation to the contrary by any of the appellants is baseless, violates the terms of the stipulations executed by each of the appellants, and should be summarily rejected.

### Factual Background and Summary of the Plan Confirmation Process

In order to clarify the record, the Reorganized Debtors hereby provide the Court with a short summary of the Plan confirmation process and the pertinent provisions of the Confirmation Order and the Findings and Conclusions which consensually bifurcated the Bankruptcy Court's determination below of the limited federal asbestos insurance assignment and preemption issue presented in these appeals. A more detailed exposition of the consensual bifurcated order procedure before the Bankruptcy Court is set forth in the FCR's appellee brief, which the Reorganized Debtors join. Therefore, the background summary below primarily addresses the Plan confirmation process, which lays the foundation to refute certain of the arguments of appellant LMI.

FM and its affiliates collectively comprise one of the world's largest manufacturers of automotive and other vehicle parts. See Disclosure Statement Describing Third Amended Joint Plan of Reorganization, dated June 4, 2004, at 18 (D.I. 5122, the "*Discl. St.*"). On October 1, 2001, FM and 156 of its affiliates commenced chapter 11 cases before the Bankruptcy Court, while 133 of the Debtors (each of which is incorporated under the laws of England and Wales)

4

simultaneously commenced administration proceedings in the United Kingdom.[4] *Id.* at 1. The

initial years of the cases involved intense litigation and negotiation among the key parties in

interest. *Id.* at 65-84.

However, in the wake of a pivotal deal among the Debtors, the ACC and the UCC, on

June 4, 2004, the Debtors, together with representatives of the vast majority of their economic

stakeholders, filed the Third Amended Joint Plan of Reorganization. (D.I. 5121, the "Third

Amended Plan"). The Third Amended Plan was based primarily on an agreement, which, at its

core, provided that 49.9% of the common stock of Reorganized Federal-Mogul would be

distributed to the company's prepetition noteholders, and 50.1% of the stock would be placed in

a Trust established pursuant to Section 524(g) of the Bankruptcy Code for the benefit of holders

of asbestos-related personal injury claims and demands. See *Discl. St.* at 80 [D.I. 5122]. The

Third Amended Plan also provided that holders of asbestos-related personal injury claims and

demands would exclusively channel all of their claims and demands to the Trust and would, in

return, receive the economic benefits of certain of the assets contributed to the Trust, including

the Debtors' asbestos insurance policies and related asbestos insurance rights and recoveries. *Id.*

Certain of the insurers objected to the Third Amended Plan on the grounds, among

others, that the transfer of asbestos insurance-related assets to the Trust would violate certain

purported anti-assignment provisions in the Debtors' insurance policies and otherwise applicable

State law. See, e.g., Certain Insurers' Preliminary Objections to Third Amended Joint Plan of

Reorganization, dated September 27, 2004 [D.I. 5843]. Thus, as a result of the insurers'

objections to the confirmation of the Debtors' plan, since at least the fall of 2004, the federal

---

[4] An additional Debtor, T&N Investments Limited, was incorporated under the laws of Scotland
and commenced administration proceedings before the Court of Session in Edinburgh, Scotland
in April 2002.

asbestos insurance assignment and preemption issue that is the subject of these appeals has been joined in these cases, and a live controversy has arisen.

The Debtors, the ACC and the FCR subsequently entered into an agreement with certain insurers (including those appealing insurers that submitted the Certain Appellants' Brief on Appeal filed in these appeals at Docket No. 13 (the "Certain Appellants")), in which the Debtors, the ACC and the FCR agreed to modify the Third Amended Plan by, for example, adding certain so-called insurance neutrality provisions with regard to the stipulating insurers, in exchange for such insurers' agreement to limit their plan confirmation objections and related confirmation discovery.[5] This agreement was embodied in a Stipulation and Agreed Order (the "Certain Insurers' Insurance Stipulation"), dated June 30, 2006 [D.I. 10113], which was approved by the Bankruptcy Court on September 19, 2006.[6]

Consistent with the terms of the Certain Insurers' Insurance Stipulation, on or about June 5, 2007, the Plan Proponents filed the Fourth Amended Plan, which incorporated (among other things) the modifications to which the Debtors, the ACC and the FCR had agreed in the Certain Insurers' Insurance Stipulation. [D.I. 12620-22]. The Plan continued to contemplate that certain asbestos insurance-related proceeds, assets and other rights would be contributed to the Trust on the Effective Date of the Plan, and that the Debtors, the Reorganized Debtors, their respective

---

[5] Pursuant to the Certain Insurers' Insurance Stipulation (as defined below), certain insurers (including the Certain Appellants) agreed to limit their objections to the Plan to the following two narrow and discrete legal issues: "i. Whether, under the Bankruptcy Code as a matter of law, the Assignment is valid and enforceable against the Insurers notwithstanding anti-assignment provisions in or incorporated in the Policies and applicable state law; and ii. Whether the Plan complies with Bankruptcy Code Sections 524(g)(2)(B)(i)(II) and (III)." *Certain Insurers' Insurance Stipulation*, § 3.a. [D.I. 10113]

[6] See Order (I) Approving Stipulation Regarding Plan Modifications and Potential Confirmation Objections and Plan-Related Discovery By Certain Insurance Companies, (II) Staying Discovery Requests By Certain Insurance Companies, and (III) Granting Related Relief [D.I. 10606].

assets and certain other protected parties would be entitled to a channeling injunction under Section 524(g) of the Bankruptcy Code. *Plan*, §§ 1.1.218, 4.3, 9.3 [D.I. 12620].[7]

After the filing of the Fourth Amended Plan, the Plan Proponents entered into an agreement with the LMI group of insurers. Similar to the Certain Insurers' Insurance Stipulation, the Plan Proponents agreed to add (among other things) certain insurance neutrality language to the Plan with respect to LMI in exchange for LMI's agreement to limit its objections to confirmation of the Plan. This agreement was reflected in a stipulation dated July 10, 2007 (D.I. 13062, the "LMI Insurance Stipulation"), pursuant to which the Plan Proponents and LMI agreed that:

> the only issue London Market Insurers will litigate in connection with confirmation of the Plan is whether, under the Bankruptcy Code as a matter of law, the assignment of any Asbestos Insurance Policies or other rights and obligations with respect to, arising under, or related to Asbestos Insurance Policies subscribed by London Market Insurers, is valid and enforceable against London Market Insurers notwithstanding (i) anti-assignment provisions in or incorporated in the Asbestos Insurance Policies subscribed by London Market Insurers and (ii) applicable state law.

> *LMI Insurance Stipulation*, ¶ 2 [D.I. 13062].

Both the Certain Appellants and LMI (as well as other insurers) continued to prosecute objections to the Fourth Amended Plan based on the federal asbestos insurance assignment and preemption issue. See, e.g., Briefs appended under Tabs 9a and 9b to the Joint Submission of Plan Objectors' Post-Trial Briefs in Opposition to Confirmation of Fourth Amended Joint Plan of Reorganization and the prior submissions referred to therein. [D.I. 13182]. The Plan Proponents also filed merits briefs in support of the Plan's compliance with (among other provisions) Section 524(g) of the Bankruptcy Code and the Plan's proposed assignment of certain asbestos insurance rights to the Trust, notwithstanding any putative anti-assignment

---

[7] The final form of the Plan was filed with the Bankruptcy Court together with the Confirmation Order upon its entry. See D.I. 13674, Exhibit A thereto.

provisions in the subject insurance policies or otherwise applicable State law to the contrary. [D.I. 582593566, 13249]. Accordingly, the federal asbestos insurance assignment and preemption issue underlying these appeals was fully joined, briefed and argued as part of the contested proceedings before the Bankruptcy Court respecting the confirmation of the Fourth Amended Plan, and there continued to be a live controversy among the parties on this issue.

After at least eight days of hearings before the Bankruptcy Court, on June 18-21, July 9-10 and October 1-2, 2007, by the time the Plan confirmation hearings came to a close in early October 2007, the credit markets had deteriorated from the market conditions in place when the Debtors obtained their approximately $3.5 billion exit financing commitment in February of 2007. It was therefore in the best interests of the Debtors, their creditors, their interest holders and other parties in interest for the Debtors to achieve a final and non-appealable Confirmation Order and emerge from bankruptcy by the scheduled expiration of their exit financing commitment on December 31, 2007. It was in this context that, following the conclusion of the October 2, 2007 confirmation hearing, the Debtors, the other Plan Proponents and the objecting insurers extensively negotiated the bifurcation of the resolution of the federal asbestos insurance assignment and preemption issue from the Confirmation Order to facilitate the Debtors' emergence from chapter 11 on a consensual basis prior to December 31, 2007. Importantly, under the terms of the Plan, a ruling on such issue was not an express condition precedent to either the confirmation or effectiveness of the Plan, and thus could be determined separately without impacting the Debtors' ability to cause the Plan to become effective. See *Plan*, §§ 7.1, 7.2. [D.I. 13674, Exhibit A thereto].

As a result of the parties' negotiations, a group of insurers (including each of the Certain Appellants) and LMI signed two separate but similar stipulations with the Plan Proponents that,

8

among other things, established the consensual bifurcated procedure by which the Debtors' Plan could be confirmed and go effective regardless of whether, when or how the separate federal asbestos insurance assignment and preemption issue might ultimately be resolved. See Stipulation and Order Regarding Remaining London Market Objections to the Plan (D.I. 13670, the "LMI Preemption Stipulation"); Stipulation to Preserve Appeals on the Asbestos Insurance Assignment and Preemption Issue (D.I. 13671, the "Certain Insurer Preemption Stipulation"). Both stipulations were approved by the Bankruptcy Court on November 8, 2007, and the stipulations are therefore binding on all parties to these appeals. *Id.*

Consistent with these signed preemption stipulations approved by the Bankruptcy Court (and the related pleadings of the parties), both the Confirmation Order and the Findings and Conclusions contained explicit language reflecting the bifurcation of the Plan confirmation process from a ruling on the assignment and preemption issue. Specifically, Section IV.F.2 of the Confirmation Order provided that "[t]he terms and conditions of this Confirmation Order are separate and independent from, and are mutually independent of, the terms and conditions of the Preemption Order." See also *Confirmation Order*, § VII.A.4 [D.I. 13674] ("[T]his Confirmation Order does not constitute or contain a ruling on the Plan Assignment Objections or the Assignment and Preemption Issue.... Without limiting the foregoing..., the Bankruptcy Court hereby determines that ... this Confirmation Order is not approving the assignment of Insurance Rights ... set forth in the Plan or determining the Preemption Issues... [, and] the Preemption Order has been, or will be, entered separately from this Confirmation Order..."). Similarly, Section II.K. of the Findings and Conclusions provided that "[t]hese Findings of Fact and Conclusions of Law are separate and independent from, and are mutually independent of, the terms and conditions of the Preemption Order." [D.I. 13672].

Furthermore, the Confirmation Order and the Findings and Conclusions determined that, in all relevant respects, the Plan satisfied Section 524(g). The Confirmation Order, of course, confirmed the Plan – see *Confirmation Order*, Section I.A. [D.I. 13674] ("The Plan ... and each of its provisions ... are CONFIRMED in each and every respect....") – and the Plan contained a critical channeling injunction protecting the Debtors, the Reorganized Debtors and their assets from asbestos liabilities pursuant to Section 524(g) of the Bankruptcy Code. See, e.g., *Plan* § 9.3. [D.I. 13674, Exhibit A thereto]. The Findings and Conclusions contained additional detailed factual findings and legal conclusions regarding the Plan's compliance with 524(g) of the Bankruptcy Code. See, e.g., *Findings and Conclusions*, § I.F. ("The Plan comports with the Bankruptcy Code's requirements for issuance of an injunction to enjoin entities from taking legal action to recover, directly or indirectly, payment in respect of Asbestos Personal Injury Claims against the Reorganized Debtors or their property."); § I.F.1.c. ("The Trust is to be funded by the Trust Assets, which include ... the Reorganized Federal-Mogul Class B Common Stock, which constitutes securities of one of the Debtors involved in the Plan.... Under the Certificate of Incorporation for Reorganized Federal-Mogul, the holders of the Reorganized Federal-Mogul Class B Common Stock have the right to receive a proportionate share of the distributions made to holders of common stock in Reorganized Federal-Mogul.... Accordingly, the Plan satisfies section 524(g)(2)(B)(i)(II) of the Bankruptcy Code."); § II.E. ("As set forth in Section I.F. above, the Plan complies in all respects with the applicable requirements of section 524(g) of the Bankruptcy Code.") [D.I. 13672].

The Confirmation Order and the Findings and Conclusions were approved by the Bankruptcy Court on a wholly consensual basis on November 8, 2007 (D.I. 13674 and 13762, respectively). By the time the Bankruptcy Court entered the Confirmation Order and the

Findings and Conclusions, all remaining objections to the confirmation of the Plan, including

those with respect to Section 524(g) of the Bankruptcy Code, had been voluntarily withdrawn.

This Court affirmed the Confirmation Order and adopted the Findings and Conclusions on

November 13, 2007. [D.I. 13698].

      Consistent with the process consensually agreed to by all parties to the subject appeals,

the Bankruptcy Court issued its order and corresponding memorandum opinion on March 19,

2008, holding that "the assignment of rights in certain insurance policies to the asbestos trust, as

provided in part by Section 4.3 of the [Fourth Amended Plan], is valid and enforceable pursuant

to §§ 524(g), 541(c)(1), 1123(a)(5)(B) and §1129(a)(1) of the Bankruptcy Code notwithstanding

anti-assignment provisions in or incorporated in the policies and applicable state law." (D.I.

14237, the "Preemption Order").  The present appeals followed.

## LMI's Argument Regarding the Plan's Compliance with Section 524(g) of the Bankruptcy Code is Barred as a Matter of Law

      In an attempt to distract this Court from the narrow legal issue presented in these appeals,

LMI devotes a significant portion of its brief to an irrelevant and untimely argument about the

Plan's compliance with Section 524(g)(2)(B)(i)(II)[8] of the Bankruptcy Code that is barred as a

matter of law.[9]  In light of the consensual nature and circumstances surrounding the

implementation of the bifurcated order procedure below, it is abundantly clear that the Plan's

---

[8] Section 524(g)(2)(B)(i)(II) provides, in relevant part, that "[t]he requirements of this subparagraph are that the [channeling] injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization ... is to be funded in whole or in part by the securities of 1 or more debtors involved in such plan and by the obligations of such debtor or debtors to make future payments, including dividends...."

[9] LMI also asserts in its brief that the Trust Distribution Procedures ("TDP") expressly approved by the Bankruptcy Court as part of the Plan confirmation process (see, e.g., Plan, Art. IV and Exh. 1.1.217 [D.I. 13674, Exhibit A thereto, and D.I. 12621]; Confirmation Order, §§ I.A., IV.E., and VIII [D.I. 13674]; Findings and Conclusions, § I.F.2. [D.I. 13672]) are somehow flawed.  As with LMI's baseless contention regarding the Plan's compliance with Section 524(g), LMI's belated TDP arguments are barred as a matter of law and were waived by LMI below.

compliance with Section 524(g) has been irrevocably established and cannot be revisited by this Court.

First and foremost, the Plan's compliance with Section 524(g) has been fully and finally adjudicated in these cases as part of the Plan confirmation process which LMI (and the other appealing insurers) expressly stipulated was wholly separate and independent from the contested matter resulting in the Preemption Order. Thus, it is manifest that the Bankruptcy Court's determination in the Confirmation Order and the Findings and Conclusions, as affirmed by this Court, that the Plan complied in all respects with Section 524(g) of the Bankruptcy Code is *res judicata* and binding upon LMI and the other parties to these appeals. See, *e.g.*, Stoll v. Gottlieb, 305 U.S. 165, 170-72 (1938) (holding that a final, non-appealable bankruptcy confirmation order was entitled to *res judicata* effect and could not be collaterally attacked in a separate proceeding); In re Continental Airlines, Inc. (Eastern Pilots Merger Committee v. Continental Airlines, Inc.), 279 F.3d 226, 233 (3d Cir. 2002) (appellant pilots union was precluded as a matter of law from collaterally attacking a final, non-appealable bankruptcy confirmation order and was bound by the terms of that order); In re Continental Airlines, Inc. (Air Line Pilots Ass'n, Int'l v. Continental Airlines, Inc.), 145 B.R. 404, 409-12 (D. Del. 1992) (applying doctrine of *res judicata* to bar appellant pilots union from seeking to relitigate a final, non-appealable order of the Bankruptcy Court). Any suggestion by LMI that the Plan's compliance with Section 524(g) can somehow be reexamined or collaterally attacked at this late date is baseless.

Indeed, the centerpiece of the confirmed Plan was a channeling injunction issued in accordance with Section 524(g) of the Bankruptcy Code in order to shield the Reorganized Debtors, various other protected parties and their respective assets from any asbestos personal injury liabilities. The Plan's compliance with the requirements of Section 524(g) was absolutely

critical to the Debtors' ability to successfully reorganize and was hotly contested and fully

litigated during the Plan confirmation process. The Bankruptcy Court ruled on those matters

only after all parties in interest (including LMI and the other appealing insurers) had the benefit

of extensive discovery, exhaustive briefing and a lengthy evidentiary trial and oral argument. At

the conclusion of this painstaking process (including months of extraordinary negotiations and

legal proceedings under the guidance of the Bankruptcy Court), and in reliance on the consensual

bifurcated order procedure, the insurers' various objections respecting the Plan's compliance

with Section 524(g) of the Bankruptcy Code were voluntarily resolved or withdrawn.[10] The

Bankruptcy Court then entered an unopposed Confirmation Order confirming the Plan and issued

detailed and uncontested Findings and Conclusions in support of the Confirmation Order that

specifically determined, among other things, that the Plan satisfied Section 524(g) of the

Bankruptcy Code in all respects (including the provision – Section 524(g)(2)(B)(i)(II) – belatedly

cited by LMI in its brief). See, e.g., Findings and Conclusions, Sections I.F.1.c. and II.E. [D.I.

13672].[11]

As noted, the Confirmation Order was affirmed, and the Findings and Conclusions were

adopted by this Court, in its November 13, 2007 Affirmance Order. No party appealed, nor

sought to rehear, reconsider, vacate or stay, the Bankruptcy Court's Confirmation Order, its

---

[10] See, e.g., Withdrawal by ACE Insurers, One Beacon, Seaton, and Stonewall of All Plan Objections, Motions, Discovery, and Proofs of Claim, dated November 21, 2007. [D.I. 13721].

[11] For example, the Bankruptcy Court expressly found that "[t]he Trust is to be funded by the Trust Assets, which include ... the Reorganized Federal-Mogul Class B Common Stock, which constitutes securities of one of the Debtors involved in the Plan.... Under the Certificate of Incorporation for Reorganized Federal-Mogul, the holders of the Reorganized Federal-Mogul Class B Common Stock have the right to receive a proportionate share of the distributions made to holders of common stock in Reorganized Federal-Mogul.... Accordingly, the Plan satisfies section 524(g)(2)(B)(i)(II) of the Bankruptcy Code." Findings and Conclusions, § I.F.1.c. [D.I. 13672]. In addition, the Bankruptcy Court concluded that "[a]s set forth in Section I.F. above, the Plan complies in all respects with the applicable requirements of section 524(g) of the Bankruptcy Code." Findings and Conclusions, § II.E. [D.I. 13672].

Findings and Conclusions or this Court's Affirmance Order. It is therefore undisputed that the Confirmation Order is a final and non-appealable order, and the terms of that order and the Debtors' confirmed Plan are binding upon LMI, the other appealing insurers and all other parties in interest. The Plan's compliance with Section 524(g) has thus been fully and finally established as a matter of fact and law, and cannot be collaterally attacked by LMI (or any other party). For LMI to even remotely suggest otherwise should not be countenanced by this Court.

For the sake of completeness, the Reorganized Debtors would also like to make clear that, even if the doctrine of *res judicata* did not defeat LMI's attempt to cast doubt upon the core protections in the Debtors' confirmed Plan, LMI's suggestion that the Plan somehow does not comply with Section 524(g)(2)(B)(i)(II) of the Bankruptcy Code would fail for several reasons. For example, LMI did not press this Section 524(g)(2)(B)(i)(II) compliance argument before the Bankruptcy Court.[12] To the contrary, LMI stipulated with the Plan Proponents that the only issue it would litigate in connection with Plan confirmation would be the limited federal asbestos insurance assignment and preemption issue (in contrast to certain other objecting insurers, who stipulated they would limit their Plan objections to the federal asbestos insurance assignment and preemption issue *and* Section 524(g) compliance issues). See *LMI Insurance Stipulation*, ¶ 2 [D.I. 13062]; *Certain Insurers' Insurance Stipulation*, ¶ 3.a [D.I. 10113]. It is black-letter law that an argument is deemed waived on appeal if the party, as here, has contractually relinquished the issue or did not otherwise press the argument in the court below.[13] See, e.g., Fleck v. KDI

---

[12] Nor did LMI preserve the right to challenge TDP issues below. See *LMI Insurance Stipulation*, ¶ 2 [D.I. 13062].

[13] Furthermore, LMI's unsubstantiated "factual" assertions regarding the funding of the Trust are baseless, simply incorrect, and outside of the record on appeal. Similarly, to the extent LMI purports to describe the application of the legal standards in Section 524(g) to the facts of this case or the establishment and administration of the Trust, its analysis is flawed as a matter of law, and should have no bearing on the subject matter of these appeals.

Sylvan Pools, Inc., 981 F.2d 107, 116 (3d Cir. 1992) ("It is axiomatic that a party who fails to object to errors or to raise issues at trial waives the right to complain on appeal.").[14] Accordingly, LMI's Section 524(g) argument should be summarily dismissed.

### Conclusion

Based upon the foregoing, and for the reasons set forth in the appellee briefs of the ACC and the FCR filed in connection herewith, as well as the various briefs filed by the Plan Proponents in the Bankruptcy Court in support of confirmation of the Plan, the Reorganized Debtors respectfully request that this Court enter an order affirming the judgment of the Bankruptcy Court in the Preemption Order, dismissing these appeals, and granting the Reorganized Debtors such further relief as may be just and proper.

---

[14] The Third Circuit in Fleck further stated that "[w]hen a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession." 981 F.2d at 116 (citations omitted).

Dated: Wilmington, Delaware       Respectfully submitted,
        June 18, 2008

                                  SIDLEY AUSTIN LLP
                                  James F. Conlan
                                  Jeffrey C. Steen
                                  Kevin T. Lantry
                                  Kenneth P. Kansa
                                  William A. Evanoff
                                  One South Dearborn Street
                                  Chicago, Illinois 60603
                                  Telephone:  (312) 853-7000

                                          -and-

                                  PACHULSKI STANG ZIEHL & JONES LLP

                                  /s/ James E. O'Neill
                                  Laura Davis Jones (Bar No. 2436)
                                  James E. O'Neill (Bar No. 4042)
                                  Scotta E. McFarland (No. 4184)
                                  919 North Market Street, 17th Floor
                                  P.O. Box 8705
                                  Wilmington, Delaware 19899-8705
                                  Telephone:  (302) 652-4100
                                  Facsimile:   (302) 652-4400

CH1 4307255v.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FEDERAL-MOGUL GLOBAL INC.,<br>T&N LIMITED, *et al.*,<br><br>            Reorganized Debtors. | ) )<br>) )<br>) )<br>) )<br>) ) | Chapter 11<br><br>Bankruptcy Case No. 01-10578 |
| CERTAIN UNDERWRITERS AT LLOYDS,<br>LONDON, *et. al.*,<br><br>            Appellants,<br><br>            v.<br><br>FEDERAL-MOGUL GLOBAL INC., *et al.*,<br><br>            Appellees. | ) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) ) | Civil Action Nos. 08-0229 and 08-0230<br><br>Judge Joseph H. Rodriguez |

## CERTIFICATE OF SERVICE

I, James E. O'Neill, hereby certify that on the 18th day of June, 2008, I caused a

copy of the following document(s) to be served on the individuals on the attached service lists in

the manner indicated:

**BRIEF OF APPELLEE REORGANIZED DEBTORS**

*James E. O'Neill*

James E. O'Neill (Bar No. 4042)

**Federal Mogul 2008 Insurers' Appeal Email Service List**

Nancy.Manzer@wilmerhale.com;Anna.Newsom@mendes.com;bejameson@prickett.com;DTarpey@seyfarth.com; eharron@ycst.com; Eileen.McCabe@mendes.com;
efelix@margolisedelstein.com;jpatton@ycst.com;yoderj@whiteandwilliams.com;
JKahane@duanemorris.com; jdorsey@ycst.com; kcusick@crowell.com;
kkansa@sidley.com;KCM@capdale.com;klantry@sidley.com;khartley@butlerrubin.com;krosella@seyfarth.com;mminella@ycst.com;mshiner@tuckerlaw.com;
PAlp@crowell.com;pzevnik@morganlewis.com;pvnl@capdale.com;rpalacio@ashby-geddes.com;rwriley@duanemorris.com;RJZapf@duanemorris.com;
RWRoten@duanemorris.com; sbellew@cozen.com;
thomas.quinn@mendes.com;WFactor@seyfarth.com;wbowden@ashby-geddes.com;
jsteen@sidley.com;jconlan@sidley.com;ljone@pszjlaw.com;joneill@pszjlaw.com;
ei@capdale.com;szieg@ycst.com Craig.Goldblatt@wilmerhale.com;
Michelle.Goldis@wilmerhale.com;MYurkewi@klehr.com;kfinlayson@pszjlaw.com

**Federal Mogul Insurers Revised Service List**
Case No. 01-10578 (JKF)
Document No. 138201
09 – Hand Delivery
13 – First Class Mail

*Hand Delivery*
*(U.S. Trustee)*
Richard Schepacarter, Esquire
Office of the United States Trustee
844 King Street, Ste 2207
Wilmington, DE  19801

*Hand Delivery*
*(Counsel for Certain Underwriters at Lloyd's*
*London, and Certain London Market Companies)*
Richard W. Riley, Esquire
Duane Morris LLP
1100 North Market Street
Suite 1200
Wilmington, DE  19801

*Hand Delivery*
*(Co-Counsel for Official Committee of Asbestos Claimants)*
Marla R. Eskin, Esquire
Kathleen Campbell Davis, Esquire
Campbell& Levine, LLC
800 King Street, Ste 300
Wilmington, DE  19801

*Hand Delivery*
*(Counsel for Eric D. Green, Futures Representative)*
James L. Patton, Jr., Esquire
Edwin J. Harron, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801

*Hand Delivery*
*(Counsel for Columbia Casualty Company, et al.)*
Bruce E. Jameson, Esquire
Prickett, Jones & Elliott, P.A/
1310 King Street
Wilmington, DE  19801

*Hand Delivery*
*(Counsel for AIG Casualty Company, et al.)*
Sean J. Bellew, Esquire
Cozen O'Connor
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE  19801

*Hand Delivery*
*(Counsel for Allianz Companies)*
James S. Yoder, Esquire
White & Williams LLP
824 Market Street, Ste 902
Wilmington, DE  19801

*Hand Delivery*
*(Counsel for Fireman's Fund Insurance Company & National Surety Company)*
John D. Demmy, Esquire
Stevens & Lee, P.C.
1105 North Market Street, 7th Floor
Wilmington, DE  19801

*Hand Delivery*
*(Counsel for Hartford Accident & Indemnity Company, First State Insurance Company and New England Insurance Company)*
Michael W. Yurkewicz, Esquire
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
919 Market Street
Suite 1000
Wilmington, DE  19801

*First Class Mail*
*(Counsel for Certain Underwriters at Lloyd's*
*London, and Certain London Market Companies)*
Eileen T. McCabe, Esquire
Mendes & Mount, LLP
750 Seventh Avenue
New York, NY 10019

*First Class Mail*
*(Counsel for Certain Underwriters at Lloyd's*
*London, and Certain London Market Companies)*
Russell W. Roten, Esquire
Jeff D. Kahane, Esquire
Katherine Nichols, Esquire
Duane Morris LLP
633 W. Fifth Street, Suite 4600
Los Angeles, CA 90071

*First Class Mail*
*(Counsel for Certain Underwriters at Lloyd's*
*London, and Certain London Market Companies)*
Michael A. Shiner, Esquire
Tucker Arensberg
1500 One PPG Place
Pittsburgh, PA 15222

*First Class Mail*
*(Co-Counsel to Asbestos Committee)*
Elihu Inselbuch, Esquire
Rita Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

*First Class Mail*
*(Co-Counsel to Asbestos Committee)*
Peter Van N. Lockwood Esquire
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

*First Class Mail*
*(Counsel for Columbia Casualty Company, et al.)*
David C. Christian II, Esquire
William J. Factor, Esquire
Seyfarth Shaw, LLP
131 S. Dearborn, Suite 2400
Chicago, IL 60603

*First Class Mail*
*(Counsel for AIG Casualty Company, et al.)*
Michael S. Davis, Esquire
Zantra Van Roy, Esquire
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, NY 10022

*First Class Mail*
*(Counsel for Allianz AG)*
Elit R. Felix, II Esquire
Margolis Edelstein
The Curtis Center, 4th Floor
601 Walnut Street
Philadelphia, PA 19106

*First Class Mail*
*(Counsel for Fireman's Fund Insurance Company & National Surety Company)*
Leonard P. Goldberger, Esquire
Stevens & Lee, P.C.
1818 Market Street, 29th Floor
Philadelphia, PA 19103

*First Class Mail*
*(Counsel for Defendants Hartford Accident and Indemnity Company, et al.)*
William J. Bowman, Esquire
James P. Ruggeri, Esquire, Esquire
Edward B. Parks, II, Esquire
Hogan & Hartson, LLP
555 13th Street, NW
Washington, DC 20004

***First Class Mail***
*(Counsel for Hartford Accident & Indemnity*
*Company, First State Insurance Company and New*
*England Insurance Company)*
Craig Goldblatt, Esquire
Nancy L. Manzer, Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006

***First Class Mail***
***(Counsel for Columbia Casualty Company,***
***et al.)***
Steven M. Crane, Esquire
Berkes Crane Robinson & Seal LLP
515 South Figueroa Street, Ste 1500
Los Angeles, CA  90071

***First Class Mail***
***(Counsel for Debtors)***
James F. Conlan, Esquire
Larry J. Nyhan, Esquire
Jeffrey C. Steen, Esquire
Kevin T. Lantry, Esquire
Kenneth P. Kansa, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL  60603