**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FEDERAL-MOGUL GLOBAL INC., ) | Chapter 11 |
| T&N LIMITED, *et al.,* ) | |
| ) | Bankruptcy Case No. 01-10578 |
| Reorganized Debtors. ) | |
| ) | |
| CERTAIN UNDERWRITERS AT LLOYDS, ) | Civil Action Nos. 08-0229 and 08-0230 |
| LONDON, *et al.,* ) | |
| ) | |
| Appellants, ) | Judge Joseph H. Rodriguez |
| ) | |
| v. ) | |
| ) | |
| FEDERAL-MOGUL GLOBAL INC., *et al.* ) | |
| ) | |
| Appellees. ) | |
| ) | |

**CERTAIN APPELLANTS' REPLY BRIEF**

KLEHR, HARRISON, HARVEY
  BRANZBURG AND ELLERS LLP
Michael W. Yurkewicz
919 Market Street, Suite 1000
Wilmington, DE 19801
(302) 426-1189

HOGAN & HARTSON, L.L.P.
William J. Bowman
James P. Ruggeri
Edward B. Parks, II
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5600

WILMER CUTLER PICKERING
  HALE AND DORR LLP
Craig Goldblatt
Danielle Spinelli
Nancy L. Manzer
Margaret Williams Smith
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6000

*Counsel for Appellants Hartford Accident and Indemnity Company, First State Insurance
Company, and New England Insurance Company*

WHITE AND WILLIAMS LLP
James S. Yoder
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE  19899-0709
(302) 467-4525

MARGOLIS EDELSTEIN
Elit R. Felix, II
The Curtis Center, 4th Floor
601 Walnut Street
Philadelphia, PA  19106-3304
(215) 931-5870

*Counsel for Appellants Allianz Global Corporate & Specialty AG (as successor-by-partial-merger to Allianz Verischerungs AG as to Policy No. H. 0 001 456); Allianz Global Risks U.S. Insurance Company (f/k/a Allianz Insurance Company); and Allianz Underwriters Insurance Company (f/k/a Allianz Underwriters, Inc.)*

COZEN O'CONNOR
Sean J. Bellew
1201 N. Market Street
Suite 1400
Wilmington, DE  19801
(302) 295-2026

ZEICHNER ELLMAN & KRAUSE LLP
Michael S. Davis
Jantra Van Roy
575 Lexington Avenue
New York, New York  10022
(212) 223-0400

*Counsel for Appellants AIG Casualty Company; AIU Insurance Company; American Home Assurance Company; Granite State Insurance Company; Insurance Company of the State of Pennsylvania; Lexington Insurance Company; National Union Fire Insurance Company of Pittsburgh, Pa; New Hampshire Insurance Company*

PRICKETT, JONES & ELLIOTT, P.A.
Bruce E. Jameson
1310 King Street
Wilmington, DE  19899
(302) 888-6500

BERKES CRANE ROBINSON & SEAL LLP
Steven M. Crane
515 South Figueroa Street, Suite 1500
Los Angeles, CA  90071
(213) 955-1150

SEYFARTH SHAW LLP
David C. Christian II
William J. Factor
131 S. Dearborn Street, Suite 2400
Chicago, Illinois  60603
(312) 460-5000

*Columbia Casualty Company, Continental Casualty Company, The Continental Insurance Company, Both In Its Individual Capacity and As Successor To Certain Interests Of Harbor Insurance Company*

STEVENS & LEE, P.C.                     STEVENS & LEE, P.C.
John D. Demmy                           Leonard P. Goldberger
1105 North Market Street, 7th Floor     1818 Market Street, 29th Floor
Wilmington, DE  19801                   Philadelphia, PA  19103
(302) 425-3308                          (215) 864-7000

*Fireman's Fund Insurance Company and National Surety Company*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I.    THE PREEMPTION ORDER IS AN IMPROPER DECLARATORY
      JUDGMENT ..................................................................................................................2

      A.    The Preemption Order Purports To Resolve A Non-Justiciable Issue ...................2

      B.    The Preemption Order Could Be Entered Only In An Adversary
            Proceeding...........................................................................................................3

II.   SECTION 1123(a)(5) DOES NOT PREEMPT THE ANTI-ASSIGNMENT
      PROVISIONS OF THE INSURANCE POLICIES.........................................................6

      A.    The Text, Structure, Legislative History, And Context Of Section 1123(a)
            Refute Appellees' Interpretation Of Its Preemptive Language...............................6

            1.    Section 1123(a) Cannot Preempt The Vast Array Of
                  Nonbankruptcy Law That Appellees' Interpretation Would
                  Have It Preempt ...........................................................................................6

            2.    Section 1123(a) Does Not Preempt Provisions Of Private
                  Contracts ...................................................................................................13

      B.    *Combustion Engineering* Did Not Address The Preemptive Scope Of
            Section 1123(a) ..................................................................................................15

III.  PRESERVING THE CONTRACTUAL RIGHTS FOR WHICH THE
      PARTIES BARGAINED DOES NOT CONFER A "WINDFALL"
      ON INSURERS ...........................................................................................................18

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995).......................................................13, 14

*BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)................................................................7, 10

*Butner v. United States*, 440 U.S. 48 (1979).........................................................................11, 18

*Calderon v. Ashmus*, 523 U.S. 740 (1998) ................................................................................2, 3

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ...........................................................13, 14

*Coffman v. Breeze Corps.*, 323 U.S. 316 (1945)............................................................................2

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001)..................................................................................11

*Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004).......................11

*Hibbs v. Winn*, 542 U.S. 88 (2004)...............................................................................................9

*Holywell Corp. v. Smith*, 503 U.S. 47 (1992) ...............................................................................17

*In re Applewood Chair Co.*, 203 F.3d 914 (5th Cir. 2000)..............................................................3

*In re Baker & Drake, Inc.*, 35 F.3d 1348 (9th Cir. 1994)...............................................................20

*In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004)......................................... *passim*

*In re Crane Automotive, Inc.*, 88 B.R. 81 (Bankr. W.D. Pa. 1988) ................................................14

*In re FCX, Inc.*, 853 F.2d 1149 (4th Cir. 1988) ......................................................................17, 18

*In re G-I Holdings, Inc.*, 278 B.R. 376 (Bankr. D.N.J. 2002) ..........................................................2

*In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171 (3d Cir. 1996) ........................................................2

*In re Hanson*, 397 F.3d 482 (7th Cir. 2005) ..................................................................................4

*In re Indian Palms Assocs.*, 61 F.3d 197 (3d Cir. 1995)................................................................14

*In re Kaiser Aluminum Corp.*, 343 B.R. 88 (D. Del. 2006)............................................................17

*In re Mansaray-Ruffin*, 2008 WL 2498048 (3d Cir. June 24, 2008) ................................................4

*In re Public Serv. Co. of N.H.*, 99 B.R. 506 (Bankr. D.N.H. 1989).................................................3

*Integrated Solutions, Inc. v. Service Support Specialties, Inc.*,
    124 F.3d 487 (3d Cir. 1997).................................................................................. *passim*

*Kawaauhau v. Geiger*, 523 U.S. 57 (1998)....................................................................................9

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)..............................................................7

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ..........................................................8, 10, 11

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986)...........10

*NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984)............................................................14

*National Am. Ins. Co. v. Jamison Agency, Inc.*, 501 F.2d 1125 (8th Cir. 1974) ............19

*Nixon v. Missouri Municipal League*, 541 U.S. 125 (2004)..............................................13

*Norfolk & W. Ry. Co. v. American Train Dispatchers' Ass'n*, 499 U.S. 117 (1991) ....13

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) ............2

*People's Bank  v. Calhoun*, 102 U.S. 256 (1880)................................................................6

*Pacific Gas & Elec. Co. v. California*, 350 F.3d 932 (9th Cir. 2003) ....................8, 9, 18

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).................................................................14

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973)........................10

*Whitman v. American Trucking Ass'ns*, 531 U.S. 457 (2001) .........................................12

## STATUTES AND RULES

11 U.S.C. § 363(*l*)................................................................................................................14

11 U.S.C. § 365(e)................................................................................................................14

11 U.S.C. § 365(f).................................................................................................................14

11 U.S.C. § 502(b)................................................................................................................14

11 U.S.C. § 541(c)................................................................................................................14

11 U.S.C. § 1123(a) ........................................................................................................*passim*

11 U.S.C. § 1124(2) .............................................................................................................14

11 U.S.C. § 1142(a) .........................................................................................................9, 18

28 U.S.C. § 2201....................................................................................................................3

Fed. R. Bankr. P. 7001(1) ....................................................................................................4

Fed. R. Bankr. P. 7001(9) ....................................................................................................4

## LEGISLATIVE MATERIALS

124 Cong. Rec. 34,005 (1978) .................................................................................9, 18

H.R. Rep. No. 96-1195 (1980) ........................................................................8

S. Rep. No. 98-65 (1983) ................................................................................8

Pub. L. No. 98-353, 98 Stat. 333 (1984) .......................................................8

## MISCELLANEOUS

Wright & Miller, *Federal Practice and Procedure* (2008) .............................3

The bankruptcy court's Preemption Order is both procedurally and substantively in error, and it must be vacated. Nothing in Appellees' submissions calls that conclusion into question. Appellees fail altogether to engage with the binding Supreme Court precedent that demonstrates that the Preemption Order was an improper declaratory judgment because it resolved a non-justiciable issue. Nor do Appellees have any viable response to the point that such a judgment can be obtained only through an adversary proceeding, instead resorting to the absurd claim that a stipulation entered at the Debtors' request, and that expressly preserved all parties' appeal rights, waived Appellants' right to raise that argument on appeal.

On the merits, Appellees' responses are no more convincing. First, they claim, the "plain language" of § 1123(a) preempts any and all federal or state law, or provisions of private agreements, that might govern any transaction that a debtor chooses as a means to implement its plan. But that surpassingly broad preemption is hardly "plain" from the text of § 1123(a). It also conflicts with the larger statutory context, the legislative history, and relevant canons of statutory interpretation. Second, Appellees contend that the Third Circuit has already decided the question. That is simply wrong: the decision on which Appellees rely, *Combustion Engineering*, never addressed the preemptive scope of § 1123(a); the passage to which they point was dicta in any case; and previous Third Circuit precedent belies their interpretation.

Finally, Appellees vigorously urge that the insurers' contractual rights—freely bargained for outside bankruptcy—must be overridden, or the insurers will receive a "windfall." Nothing could be further from the truth. The insurers seek only to preserve their right to raise the same defenses to coverage that would be available to them outside bankruptcy. Nor will their ability to raise such defenses prevent debtors from going forward with a § 524(g) plan. Rather, it is Appellees who seek a "windfall" by attempting to increase their rights under the policies and remove one of those possible defenses before insurers have even had a chance to assert it. Both the Supreme Court and the Third Circuit have made clear that, absent unequivocal Congressional intent to the contrary, the Bankruptcy Code should be read to preserve parties' state-law rights and entitlements. There is no justification for a different outcome in this case.

## I.    THE PREEMPTION ORDER IS AN IMPROPER DECLARATORY JUDGMENT

### A.    The Preemption Order Purports To Resolve A Non-Justiciable Issue

The Supreme Court has repeatedly held that courts may not issue declaratory judgments regarding "the validity of a defense the [defendant] may, or may not, raise in a [subsequent] proceeding." *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998). Such judgments do not resolve any actual case or controversy, but merely permit the plaintiff "to gain a litigation advantage by obtaining an advance ruling on an affirmative defense." *Id.; see also Coffman v. Breeze Corps.*, 323 U.S. 316, 322-24 (1945). But that is precisely what the bankruptcy court did here: it issued a judgment that did not resolve any dispute between the parties over insurance coverage, but merely purported to hold invalid one possible defense to coverage that the insurers could raise in such separate litigation. While Appellees ignore the Supreme Court precedent holding such a judgment improper, that precedent is binding and requires that the Preemption Order be vacated.

Appellees contend that the Preemption Order was not a declaratory judgment and that the bankruptcy court had authority to issue the order because of "its statutory jurisdiction over core proceedings and exclusive jurisdiction over property of the estate." FCR Br. 14-16. Neither aspect of the bankruptcy court's jurisdiction, however, grants it the power to issue the Preemption Order. While a debtor's insurance policies may be property of the estate, it does not follow that disputes over the coverage provided by such policies are "core proceedings." To the contrary, such disputes—state-law contract actions brought by the debtor against a third party— are quintessential non-core proceedings as to which bankruptcy courts may not, under Article III, issue final judgment. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84-87 (1982) (plurality); *id.* at 89-91 (Rehnquist, J., concurring) (non-Article III bankruptcy courts may not constitutionally render final judgment or issue binding orders in a traditional contract action arising under state law).[1]

---

[1] *See also In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996) (a proceeding is "core" only if "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case"; rejecting contention that all matters relating to administration of estate property are core) (citation omitted); *In re G-I Holdings, Inc.*, 278 B.R. 376 (Bankr. D.N.J. 2002) (holding that insurance coverage dispute was non-core).

More to the point, regardless of whether an insurance coverage suit could ever be a core proceeding, no statute could give either bankruptcy or district courts the authority to issue an order like the Preemption Order. The Preemption Order is effectively a declaratory judgment (and would have been even had it been made part of the Confirmation Order), because it purports to declare the rights of the parties with respect to a state-law contract action without adjudicating any claim for coercive relief such as damages or an injunction. *See* 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction," a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); 10B Wright & Miller, *Federal Practice and Procedure* § 2751 (2008) (explaining purpose of declaratory judgments).[2] While courts sitting in bankruptcy may issue declaratory judgments in matters within their § 1334 jurisdiction, they are bound by the basic constitutional constraint on such a judgment: it must address a ripe and justiciable case or controversy. The Preemption Order, which does "not resolve the entire case or controversy" between the parties, but "merely determine[s] a collateral legal issue governing certain aspects of their pending or future suits," does not satisfy that requirement and is invalid. *Ashmus*, 523 U.S. at 747.[3]

### B.   The Preemption Order Could Be Entered Only In An Adversary Proceeding

Even if the bankruptcy court had jurisdiction to enter the Preemption Order—which it did not—the order was improper. "[A] proceeding to obtain a declaratory judgment relating to" "a proceeding to recover money or property" must be commenced and prosecuted through an

---

[2] *In re Applewood Chair Co.*, 203 F.3d 914 (5th Cir. 2000), is not to the contrary. In *Applewood*, the bankruptcy court issued an order approving the sale of certain estate property, a core proceeding under 28 U.S.C. § 157(b)(2)(N) and one not required to be brought via an adversary proceeding. The Fifth Circuit unsurprisingly held that a subsequent motion to clarify the order approving the sale likewise was not a declaratory judgment action required to be brought through an adversary proceeding. 203 F.3d at 918. What occurred here—the issuance of an order purporting to determine the validity of a defense to a non-core insurance coverage action not before the court—was not remotely similar.

[3] Appellees' argument that the Preemption Order resolved a "ripe" dispute because the parties were adverse, the order resolved a legal question, and the order had "practical utility" (FCR Br. 16-19) is thus hollow. Appellees rely entirely on boilerplate generalities and do not even attempt to address the binding Supreme Court precedent addressing the precise situation here. And the only decision Appellees cite that addresses the propriety of a declaratory judgment as to the preemptive effect of a plan, *In re Public Serv. Co. of N.H.*, 99 B.R. 506 (Bankr. D.N.H. 1989)—to the extent it can even be read to address a situation like that here—cannot be reconciled with the Supreme Court's subsequent ruling in *Calderon v. Ashmus*.

adversary proceeding, with its attendant procedural protections. Fed. R. Bankr. P. 7001(1), (9). Debtors may not circumvent Rule 7001 and obtain such a judgment "without filing an adversary proceeding" simply by "inserting … findings … in their proposed plans." *In re Hanson*, 397 F.3d 482, 484-85 (7th Cir. 2005). Indeed, the Third Circuit held only last week that "where the Rules require an adversary proceeding … a creditor has the due process right not to have th[e] issue resolved without one." *In re Mansaray-Ruffin*, 2008 WL 2498048, at *10 (3d Cir. June 24, 2008) (plan that had become final was not preclusive as to matter that should have been decided by adversary proceeding, despite creditor's actual notice of confirmation proceedings).[4]

Appellees do not dispute that rule, but argue that the Preemption Order did not relate to "a proceeding to recover money or property" and thus fell outside Rule 7001's requirements. FCR Br. 19-21. But a judgment as to the validity of a defense to a suit to recover proceeds under insurance policies unquestionably is a judgment relating to a proceeding to recover money or property, and Appellees offer no explanation for their bald assertion to the contrary.

Lacking any better response to the Preemption Order's patent procedural deficiencies, Appellees retreat to the contention that, by consenting to have the preemption issue decided separately from plan confirmation, the insurers waived their right to object to those deficiencies. FCR Br. 12-14. Appellees' waiver argument is living proof of the adage that no good deed goes unpunished. As explained in our opening brief (Br. 9-10), the insurers entered into the Preemption Appeal Stipulation as an accommodation to the debtors, who were at risk of losing their exit financing, and incurring enormous additional expense in obtaining new credit, if the Plan did not become effective by the end of 2007. The insurers thus agreed to bifurcate the preemption issue from plan confirmation, so that they could appeal the Preemption Order without preventing the Plan from becoming effective. At the time, the parties agreed that process would not waive any of the parties' rights on appeal. As Debtors' counsel explained:

---

[4] *Mansaray-Ruffin* thus refutes Appellees' argument (FCR Br. 13-14) that the failure to commence an adversary proceeding was harmless because the insurers participated in the confirmation proceedings. In any case, that argument cannot cure the more basic jurisdictional flaw in the Preemption Order.

> [W]e obviously appreciate that the ACC and the Futures Rep. will only agree to
> remove the assignment language from the confirmation order if the separate
> assignment order is satisfactory to them, that they're not losing anything in that
> process *and the same with respect to the insurers*.

Oct. 4, 2007 Tr. [D.I. 13481] at 11:19-24 (emphasis added).[5]

Despite this clear indication that insurers' consent to the bifurcation of the preemption

issue was not intended to waive any issues on appeal, Appellees now argue waiver because

"Certain Appellants explicitly requested that the Bankruptcy Court resolve the Assignment and

Preemption Issue by way of a separate contested matter." FCR Br. 2. But the key word here is

"separate." Before entry of the Preemption Appeal Stipulation, Debtors sought a declaration as

to the validity of the assignment in the order confirming the plan. The insurers objected that

such a declaratory judgment was improper in the contested matter regarding plan confirmation,

and could be obtained only through an adversary proceeding.[6] In agreeing to the Preemption

Appeal Stipulation, therefore, the insurers did not consent to resolution of the preemption issue

in a contested matter; it was already being resolved in a contested matter over their objections.

Rather, the insurers consented only to spin off the preemption ruling into a *separate* contested

matter so that Debtors could obtain the year-end plan effective date they so desperately needed,

without prejudicing the insurers' right to appeal the Preemption Order. For Appellees to argue

now that, by granting Debtors this concession, the insurers waived their right to challenge the

procedural defects to which they had objected all along is nothing short of disingenuous.

The insurers thus waived nothing. But even if they had, no "waiver" could cure the

central flaw in the Preemption Order: the bankruptcy court lacked jurisdiction to enter it,

---

[5] This intent is also expressly reflected in both the Joint Motion and the final Preemption Appeal
Stipulation. Joint Motion [D.I. 13499], ¶ 8 ("[I]ntending to preserve all appeal rights for all parties with
respect to the Assignment and Preemption Issue … the parties have sought to have this matter adjudicated
and resolved by way of separate contested matter pursuant to this Motion"); App. D to Certain
Appellants' Brief on Appeal (Preemption Appeal Stipulation), ¶ 1 ("The Stipulating Insurers shall not
oppose … entry … of the Preemption Order, provided, however, that the Stipulating Insurers preserve all
rights to appeal the Preemption Order.").

[6] *See* Brief of Certain Insurers in Opposition to Confirmation of "Plan A" [D.I. 12611] at 1 n.4 (objecting
to Plan B on the ground that it improperly "seeks to grant the Debtors a declaratory judgment on a
disputed question of insurance coverage"); Joint Submission of Plan Objectors' Post-Trial Briefs in
Opposition to Confirmation of Fourth Amended Joint Plan of Reorganization, Tab 9a(1) [D.I. 13182] at
1-2 (objecting "to the Plan Proponents' procedurally improper effort to obtain … a declaratory judgment
with respect to … state-law coverage defenses" without an adversary proceeding).

because it addressed a non-justiciable matter—the validity of a defense that might or might not be asserted in separate insurance coverage litigation.  "[T]he mere consent of parties cannot confer upon a court … the jurisdiction to hear and decide a case."  *People's Bank v. Calhoun*, 102 U.S. 256, 260-61 (1880).  The Preemption Order must be vacated.

## II.    SECTION 1123(a)(5) DOES NOT PREEMPT THE ANTI-ASSIGNMENT PROVISIONS OF THE INSURANCE POLICIES

### A.    The Text, Structure, Legislative History, And Context Of Section 1123(a) Refute Appellees' Interpretation Of Its Preemptive Language

#### 1.    Section 1123(a) Cannot Preempt The Vast Array Of Nonbankruptcy Law That Appellees' Interpretation Would Have It Preempt

Appellees contend that the "plain meaning" of § 1123(a)(5) "reflects a clear congressional intent to override non-bankruptcy restrictions regarding the transfer of property of the estate," "empowering" the debtor to include in its plan any means for the plan's implementation it chooses, regardless of whether those means are forbidden by applicable non-bankruptcy law.  ACC Br. 18, 21.  Despite Appellees' repeated incantations of the phrase "plain language" in an attempt to bolster their claims, such a sweeping interpretation of § 1123(a)'s preemptive clause is unsupported by that section's text and structure, its legislative history, or its context within the Bankruptcy Code.  It also flouts basic canons of statutory interpretation, including the "strong presumption against … preemption in the bankruptcy context."  *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997).

*Section 1123(a)'s text and structure.*  Although Appellees claim to rely on the "plain meaning" of the preamble to § 1123(a), that language has a much more obvious and natural interpretation.  Section 1123(a)—part of the section entitled "Contents of Plan"—provides: "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall" contain eight provisions, enumerated in § 1123(a)'s eight paragraphs.  To be confirmed, a plan must (1) designate classes of claims; (2) specify classes that are unimpaired; (3) specify the treatment of impaired classes; (4) generally provide the same treatment for claims within a class; (5) "provide adequate means for the plan's implementation"; (6) provide for the inclusion in the charter of a

6

corporate debtor of certain provisions governing the voting of equity securities; (7) provide for selection of officers, directors, and trustees in a manner consistent with the interests of stakeholders; and (8) for individual debtors, provide for the payment of the debtor's future earnings to creditors as necessary.  Paragraph (5), which directs that a plan "shall … provide adequate means for the plan's implementation," in turn enumerates ten non-exclusive examples of actions that might be taken to implement a plan, "such as" "retention by the debtor of all or any part of the property of the estate" (subparagraph (A)), "transfer of all or any part of the property of the estate to one or more entities" (subparagraph (B)), and "merger or consolidation of the debtor with one or more persons" (subparagraph (C)).  None of those ten transactions, however, is *required* to appear in a plan, nor are they the only possible means by which a plan can be implemented (as the use of the phrase "such as" to introduce the examples makes clear).

The preemptive language in § 1123(a) thus means simply, and exactly, what it says:  that a plan "shall" contain the eight listed requirements "notwithstanding any otherwise applicable nonbankruptcy law" that might prevent a debtor from taking one of the eight required actions. Section 1123(a) accordingly preempts any law that might conflict with its directive as to the eight elements that a plan "shall" contain, including the obligation that a plan provide adequate means for its implementation.  It does not, however, effect a wholesale preemption of all non-bankruptcy law that might govern any non-required transaction that might be taken to implement a plan, such as an unlawful transfer of property or a merger barred by applicable antitrust law.[7]

---

[7] Appellees contend that Appellants' reading of § 1123(a) would render its preemptive language superfluous.  ACC Br. 31.  Not so.  As demonstrated above, the preemptive language in the preamble to § 1123(a) applies to each of the eight paragraphs within subsection (a).  It may be that, as to some of those eight paragraphs—for example, paragraph (1), which requires a plan to designate classes of claims—there is no relevant nonbankruptcy law that is preempted.  But that does not render § 1123(a)'s preemption clause superfluous; it clearly applies, for example, to preempt any state corporate law that would be contrary to § 1123(a)(6)'s requirements regarding issuance of equity securities and voting of such securities.  And it operates to preempt any non-bankruptcy law that exists now or might be enacted in the future that would prevent a debtor from complying with any of the eight requirements.  There is thus no superfluity.  *See, e.g., BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) (holding that foreclosure sale conducted in accordance with state law cannot be invalidated as fraudulent transfer for lack of "reasonably equivalent value" and rejecting argument that the "reasonably equivalent value" provision was thereby rendered superfluous, "since [it] will continue to have independent meaning … outside the foreclosure context"); *cf. Landgraf v. USI Film Prods.*, 511 U.S. 244, 257-63 (1994) (rejecting interpretation that would overburden specific clause in statute in order to avoid arguable superfluity).

*The legislative history.* That straightforward reading of the statute is strongly supported by its legislative history. The "notwithstanding" phrase did not appear in the original 1978 Bankruptcy Act. Its addition to § 1123(a) was first proposed in a 1980 bill. The House Judiciary Committee report accompanying that bill explained that the addition of the "notwithstanding" language "makes it clear that the rules governing what is to be contained in the reorganization plan are those specified in this section." H.R. Rep. No. 96-1195, at 22 (1980). While the 1980 bill was not enacted, the same proposed amendment was included in a 1983 bill; the Senate Report regarding that bill described the amendment as a "technical stylistic change[]." S. Rep. No. 98-65, at 84 (1983). And the same proposed amendment was included in the bill that ultimately became law in 1984, contained in a subtitle headed "Miscellaneous Amendments to Title 11." Pub. L. No. 98-353, § 507, 98 Stat. 333, 385 (1984). There is not the slightest suggestion in the legislative history that Congress viewed the addition of the "notwithstanding" language as effecting the broad preemption of large swaths of state and federal law that Appellees now claim it represented. Rather, consistent with the most natural reading of the language itself, the legislative history treats the "notwithstanding" phrase as a "technical" amendment that merely clarified "that the rules governing what is to be contained in the reorganization plan are those specified in this section." *See Pacific Gas & Elec. Co. v. California*, 350 F.3d 932, 940, 947 (9th Cir. 2003). Appellees fail even to acknowledge that legislative history. But, as the Supreme Court has put it, if Congress intended "a sweeping pre-emption" of the sort Appellees advocate here, "its failure even to hint at it" in the legislative record "is spectacularly odd." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 491 (1996) (plurality).

*The statutory context.* Appellees' view of the scope of preemption under § 1123(a) cannot be reconciled with the larger context of the Bankruptcy Code and the basic principles underlying the Code. In particular, as explained in our opening brief, Appellees' interpretation creates an inexplicable conflict with § 1142(a) of the Code. Enacted in substantially its present form as part of the 1978 Act, § 1142(a)—entitled "Implementation of Plan"—provides: "*Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to*

*financial condition*, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court."  11 U.S.C. § 1142(a) (emphasis added).  Accordingly, while § 1123(a)(5) provides that a plan "shall … provide adequate means for the plan's implementation," and lists some non-exclusive examples of such means, it is § 1142(a) that actually governs the implementation of the plan.  Under § 1142(a), any transaction proposed in a confirmed plan may be carried out notwithstanding non-bankruptcy law "relating to financial condition."  Section 1142(a) does not, however, preempt any non-bankruptcy law unrelated to the debtor's financial condition.

As the Ninth Circuit concluded in *PG&E*, the broad interpretation of the preemptive language of § 1123(a) advanced by Appellees thus makes no sense.  If § 1123(a)—which governs only what a plan must contain—"empowered" a debtor to override any applicable non-bankruptcy law that would govern a transaction simply by including the transaction in its plan, then § 1142(a)'s more limited express preemption of law that would otherwise apply to a plan's implementation would be rendered entirely superfluous, violating basic principles of statutory interpretation.[8]  Absent any indication that Congress intended the amendments to § 1123(a) to work a substantive change in the preemptive scope of the 1978 Act, the only sensible conclusion is that "a plan proposed in conformity with § 1123(a) [may] be confirmed," and the plan may then be implemented in accordance with the preemption clause of § 1142(a)—that is, notwithstanding non-bankruptcy law "relating to financial condition."  *PG&E*, 350 F.3d at 948.[9]

Appellees argue that this construction of § 1123(a) is "plainly wrong because its importation into [§] 1123(a)(5) of the words 'relating to financial condition' from [§] 1142 violates the plain meaning rule of statutory interpretation."  ACC Br. 29-30.  But reading

---

[8] As Appellees point out (ACC Br. 31), the Supreme Court has held that courts should be "hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law."  *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998); *see Hibbs v. Winn*, 542 U.S. 88, 101 (2004).

[9] The legislative history also supports this view of the relationship between § 1123(a) and § 1142(a).  Senator DeConcini's floor statement regarding the 1978 Act, after briefly discussing § 1123's provisions governing what a plan must contain, explained that "[i]f the plan is confirmed, then any action proposed in the plan may be taken notwithstanding any otherwise applicable law *in accordance with section 1142(a) of title 11*."  124 Cong. Rec. S34,005 (1978) (emphasis added).

9

§ 1123(a) merely to preempt laws that would conflict with its direction as to the eight required elements of a plan—and concluding that implementation of transactions proposed by, but not required to be contained in, a plan is governed by the preemption clause of § 1142(a)—does not require "importing" any language from § 1142(a) into § 1123(a).  Rather, it merely recognizes that the two statutory provisions address different, though complementary, questions—what a plan must contain to be confirmed and how a confirmed plan may be implemented—and that it is nonsensical to read § 1123(a) to permit implementation of transactions that § 1142(a) would prohibit.  "It is well established that [courts'] task in interpreting separate provisions of a single Act is to give the Act 'the most harmonious, comprehensive meaning possible' in light of the legislative policy and purpose." *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 631-32 (1973).  Appellees do not even attempt to make sense of the relation between these two closely linked provisions; only Appellants' reading can harmonize them.

      *The presumption against preemption.*  As the Supreme Court has stated time and again, "[i]n all pre-emption cases, and particularly those in which Congress has 'legislated … in a field which the States have traditionally occupied,' we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Medtronic*, 518 U.S. at 485 (citation omitted).  That principle applies with at least equal force in the bankruptcy context.  As the Supreme Court put it in rejecting the argument that § 554 of the Bankruptcy Code (which expressly permitted trustees to abandon burdensome property) preempted state-law restrictions on such abandonment, "[i]f Congress wishes to grant … an extraordinary exemption from nonbankruptcy law, the intention would be clearly expressed, not left to be collected or inferred from disputable considerations of convenience in administering the estate of the bankrupt." *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) (citation omitted).  The Court reaffirmed that principle in *BFP v. Resolution Trust Corp.*, explaining that absent a "clear and manifest" purpose to the contrary, "the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law."  511 U.S. 531, 544-45 (1994).  This approach is consistent with the bedrock

10

tenet that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law," to prevent a debtor "from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Butner v. United States*, 440 U.S. 48, 54-55 (1979).

The Third Circuit, too, has "adopted a restrained approach to concluding that Congress has intended to preempt state law in the bankruptcy context," doing so only where Congress has made it unequivocally clear it intended that result. *Integrated Solutions*, 124 F.3d at 492. Indeed, in that case the Third Circuit applied the presumption against preemption to decide a question virtually identical to that here, rejecting the contention that § 363 and § 704 of the Bankruptcy Code—which permit a trustee to use, sell, or lease estate property—preempted state law barring assignment of that property to a third party. "[B]y refusing to find preemption of state law restrictions on the transferability of estate property," the Court explained, "we are giving effect to an ... important purpose of the Bankruptcy Code: namely, upholding the fundamental principle that the estate succeeds only to the nature and the rights of the property interest that the debtor possessed pre-petition." *Id.* at 495.

Appellees argue that the presumption against preemption does not apply because § 1123(a) contains an express preemption clause. ACC Br. 18-20. But that argument has been explicitly rejected by the Supreme Court, which held in *Medtronic* that the presumption applies equally when the question is "the *scope* of [a statute's] intended invalidation of state law." 518 U.S. at 485.[10] That is the issue here. No one disputes that § 1123(a) preempts some nonbankruptcy law; the question is whether, as Appellees contend, it preempts *all* nonbankruptcy law governing any transaction proposed to implement a plan. Because Congress's intent to effect such sweeping preemption—in sharp contrast to the normal assumption that the

---

[10] The decisions Appellees rely on are not to the contrary. *Egelhoff v. Egelhoff* simply noted that the presumption "can be overcome where ... Congress has made clear its desire for pre-emption." 532 U.S. 141, 151 (2001). *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.* is to the same effect. 541 U.S. 246, 256 (2004) (finding no need to apply the presumption against preemption where doing so "makes no difference to resolution of the question" because the language at issue is "categorical"). Here, by contrast, Appellees' interpretation of § 1123(a) is anything but "clear."

Bankruptcy Code does not override non-bankruptcy property rights—is anything but clear from the text of § 1123(a), the presumption applies, and is controlling, here.[11]

*Consequences of Appellees' interpretation.* Finally, as demonstrated in our opening brief, Appellees' far-reaching view of the scope of § 1123(a)'s preemption clause has unacceptable and absurd consequences. On Appellees' view, the preemption clause applies to override all federal or state law or provisions of private contracts that might govern the ten specific transactions listed in § 1123(a)(5) as examples of means of implementation that may be included in a plan—such as, just to take a few instances, environmental law that might bar transfer of contaminated property, *see* § 1123(a)(5)(B); statutes or agency regulations that might bar transfer of a highly regulated business, *see id.*; or federal or state law that might bar an anti-competitive merger, *see* § 1123(a)(5)(C). Moreover—contrary to Appellees' suggestion, *see* ACC Br. 32-33—because the list of transactions in § 1123(a)(5) is merely exemplary and not exhaustive (as its use of the words "such as" makes clear), Appellees' theory necessarily means that § 1123(a) must preempt any federal or state law or contractual provision that would prevent a debtor from executing *any* transaction that can be characterized as a "means for the plan's implementation." Nothing in the statute or its legislative history remotely suggests that Congress intended to turn bankruptcy's fundamental respect for non-bankruptcy property entitlements on its head in this way. Congress does not "hide elephants in mouseholes," *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001), effecting radical and far-reaching policy changes through vague and unheralded provisions such as the 1984 amendment to § 1123(a).

Appellees have no meaningful response to this point. They suggest that § 1123(a) should be read to preempt only law that would bar transactions that are "[]related to objectives of the Bankruptcy Code." ACC Br. 32. But that limitation has no grounding in the text of § 1123(a), and in any event, it is but a weak reed when set against the debtor's putative ability to override a

---

[11] Appellees also suggest that the presumption against preemption is not implicated because "no state law requires the presence of anti-assignment clauses in insurance contracts." ACC Br. 19 n.23. That claim misapprehends the nature of the presumption against bankruptcy preemption, which presumes that absent clear contrary intent, the estate "only succeeds to the same rights the debtor possessed in the property prepetition," *Integrated Solutions*, 124 F.3d at 495, whether those rights are created by statute or contract.

vast array of nonbankruptcy law through its plan.  Ultimately, Appellees are forced to retreat to the argument that this Court should blind itself to the unacceptable consequences of their reading of § 1123(a), citing cases that purportedly have rejected "parade of horribles" arguments.  ACC Br. 33.  But one of the most venerable principles of statutory construction is that courts will not adopt a reading of a statute that will lead to absurd results when a more reasonable interpretation is available.  *See, e.g., Nixon v. Missouri Municipal League*, 541 U.S. 125, 138 (2004) (reading express preemption provision narrowly so as not to "lead[] to absurd … results").  The "parade of horribles" here is the necessary consequence of Appellees' interpretation of § 1123(a), and it is good and sufficient reason for refusing to adopt that interpretation.

### 2.    Section 1123(a) Does Not Preempt Provisions Of Private Contracts

Beyond the other fatal flaws in Appellees' reading of § 1123(a), the plain language of that section's preemption clause demonstrates that it does not apply to private contracts, but only to "otherwise applicable non-bankruptcy *law*."  11 U.S.C. § 1123(a) (emphasis added).  As demonstrated in our opening brief, a statute that preempts state "law" will not be read also to preempt private contracts, unless some other indication makes it clear that Congress so intended.  *See, e.g., Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525-26 & n.24 (1992) (plurality) ("[A] contractual commitment voluntarily undertaken should not be regarded as a 'requirement … *imposed under State law*.'"); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 221-22, 228-29 & n.5 (1995) (suit for breach of contract not preempted by statute barring states from "enact[ing] or enforc[ing] any law … relating to [air carrier] rates, routes, or services," because term "law" "connotes official, government-imposed policies, not the terms of a private contract").

Appellees contend that the distinction between "nonbankruptcy law" and private contracts is "a false dichotomy," because the anti-assignment provisions of the insurance policies are enforceable under state law, and attempt to find support for their position in *Norfolk & W. Ry. Co. v. American Train Dispatchers' Ass'n*, 499 U.S. 117 (1991).  ACC Br. 25-26.  The *Cipollone* plurality, however, rejected precisely this argument.  It acknowledged that *Norfolk* had stated that a "contract has no legal force apart from the [state] law that acknowledges its binding

13

character." *Cipollone*, 505 U.S. at 526 n.24. But, it held, this truism "does not mean that every contractual provision is 'imposed under State law.' To the contrary, common understanding dictates that a contractual requirement, although only enforceable under state law, is not 'imposed' by the State, but rather is 'imposed' by the contracting party upon itself." *Id.* In *Wolens*, the Supreme Court relied on the *Cipollone* plurality's analysis—and similarly found an argument based on *Norfolk* unpersuasive—in concluding that the word "law" in the Airline Deregulation Act's preemption provision did not encompass the terms of private contracts between the airlines and their customers. *Wolens*, 513 U.S. at 228-29 & nn.5-6.[12]

Appellees' argument that § 1123(a) preempts the terms of private contracts thus finds no support in either the "plain language" of that provision or the case law. Indeed, when construed in the context of the Bankruptcy Code as a whole, as it must be, it is clear that § 1123(a)'s preemption clause does not apply to private contracts. As noted in our opening brief (Br. 20-21), Congress did in fact expressly preempt the terms of both applicable "law" *and* private contracts in many other provisions of the Bankruptcy Code. *See, e.g.,* 11 U.S.C. § 363(*l*), § 365(e)(1), § 365(f)(1), § 541(c)(1), § 1124(2); *cf. also id.* § 502(b)(1) (providing for disallowance of claim "unenforceable … under any agreement or applicable law"). The absence of similar language preempting private contracts in § 1123(a) is powerful evidence that Congress did not intend to do so. "[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711-12 & n.9 (2004) (citation omitted); *see also, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522-23 (1984) (relying on Bankruptcy Code's express exemption of

---

[12] Appellees also claim that in *In re Indian Palms Assocs.*, 61 F.3d 197 (3d Cir. 1995), the Third Circuit agreed that § 1123(a) preempts private contracts. But that case held nothing of the kind. In *Indian Palms*, the issue was whether there was a per se rule that a nonconsensual plan may not extend a secured lien beyond its original maturity date. In finding that there was no such rule, the Third Circuit merely allowed for the possibility that the debtor could satisfy the cramdown provisions of § 1129(a). 61 F.3d at 209. The Court's discussion thus had nothing at all to do with whether § 1123(a) preempts private contracts; the provision that enabled the debtor to extend the lien without consent was not § 1123 but § 1129. *See also In re Crane Automotive, Inc.*, 88 B.R. 81, 84 (Bankr. W.D. Pa. 1988) ("If the debtor utilizes his power to modify an obligation over the objection of a secured creditor under § 1123, it is [§] 1129(b) of the Code … that enables the debtor to force the modification upon the creditor.") (cited in *Indian Palms*).

collective bargaining agreements in certain provisions to conclude that provision that did not

contain an express exemption should not be read as if it did; "Congress knew how to draft an

exclusion for collective-bargaining agreements when it wanted to").[13]

**B.    *Combustion Engineering* Did Not Address The Preemptive Scope Of Section 1123(a)**

Lacking stronger arguments based in the text, structure, or legislative history of § 1123(a)

to support their claims of sweeping preemption, Appellees rely heavily on the contention that the

Third Circuit's decision in *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004),

adopted their view.  ACC Br. 5-11.  But that is demonstrably not so.

Appellees rely on one very brief passage in the lengthy and dense *Combustion*

*Engineering* decision.  That passage is worth quoting in full:

> The London Market Insurers also contend the Plan impairs their rights under the
> anti-assignment provisions of the relevant insurance policies.  With respect to the
> anti-assignment provisions, we agree with the District Court that even if the
> subject insurance policies purported to prohibit assignment of Combustion
> Engineering's insurance proceeds, *these provisions would not prevent the*
> *assignment of proceeds to the bankruptcy estate*.[27]
>
> > [27] Section 541 effectively preempts any contractual provision that purports to limit or
> > restrict the rights of a debtor to transfer or assign[] its interests in bankruptcy.  11
> > U.S.C. § 541(c)(1) ("*[A]n interest of the debtor in property becomes property of the*
> > *estate* … notwithstanding any provision in an agreement, transfer instrument, or
> > applicable non-bankruptcy law—(A) that restricts or conditions transfer of such
> > interest by the debtor.").  The Bankruptcy Code expressly contemplates the inclusion
> > of debtor insurance policies *in the bankruptcy estate*.  Section 1123(a)(5) provides:
> >
> > > Notwithstanding any otherwise applicable bankruptcy law, a plan shall—…(5)
> > > provide adequate means for the plan's implementation, such as … (B) transfer of
> > > all or any part of [the] property of the estate to one or more entities, whether
> > > organized before or after the confirmation of such plan.
> >
> > 11 U.S.C. § 1123(a)(5).

391 F.3d at 218-19 & n.27 (emphases added).

---

[13] Appellees also contend that reading § 1123(a) not to preempt private contracts would render its preemption clause superfluous, arguing that some of the subparagraphs within § 1123(a)(5) refer to contractual matters.  ACC Br. 27-28.  That contention is incorrect.  First, as demonstrated above, *see supra* note 7, the preemption language in the preamble to § 1123(a) need not preempt specific contrary law as to every one of § 1123(a)'s many paragraphs and subparagraphs in order for the language to have meaning.  Moreover, Appellees' claim that § 1123(a) *must* preempt any law or contractual provision governing any of the exemplary transactions listed in the subparagraphs to § 1123(a)(5) simply assumes their own conclusion that § 1123(a)'s preemptive reach extends beyond law that might conflict with the eight requirements that subsection lays out for the contents of a plan.

The passage on which Appellees rely thus never mentions transfer of insurance policies *from* the estate to a trust. Rather, it focuses entirely upon the legality of transfer of the policies *to* the bankruptcy estate—a concept it mentions three times in the brief passage at issue. In support of its conclusion, the court relies primarily on § 541(c)(1), which indisputably deals only with what constitutes property of the estate, and not the manner in which a debtor-in-possession or trustee may dispose of such property. It is only § 541 that the Court refers to as having any preemptive effect. The Court's quotation of § 1123(a)(5) merely illustrates its conclusion that the Code "contemplates the inclusion of debtor insurance policies *in the bankruptcy estate.*" It ventures no comment on the preemptive scope of § 1123(a), and does not address any of the arguments that have been made, or decisions that have been rendered, regarding that question.

Moreover, even if the scanty discussion in *Combustion Engineering* could be read to address the question at issue here, it would be dicta. The Court discussed the assignment issue only in the course of addressing the objections of the London Market Insurers. *See* 391 F.3d at 218.[14] London, however, did not insure the debtor, but only two non-debtor third parties (Basic and Lummus). *Id.* at 215. The Court's discussion of the preemptive effect of § 541(c)(1) as to transfers of property *of the debtor* to the estate (and its allusion to § 1123(a)(5)), therefore, was merely a prelude to its explanation that such preemption was irrelevant to London's objections, because it issued insurance policies only to non-debtors. *See id.* at 219. Accordingly, the passage on which Appellees rely was not necessary to any holding of *Combustion Engineering*.

Appellees' claims regarding *Combustion Engineering* are particularly implausible in light of the Third Circuit's prior decision in *Integrated Solutions*. As discussed above, in that case the Third Circuit addressed "a basic preemption issue: whether Congress intended to permit bankruptcy trustees to dispose of tort claims belonging to the estate in violation of state laws that forbid the assignment of such claims." 124 F.3d at 491. It concluded that Congress did not intend such preemption. *Id.* at 495-96. In doing so, the Court expressly distinguished between

---

[14] Appellees note that Travelers also raised objections to the assignment of the policies in the Third Circuit. ACC Br. 8. But Travelers settled before the Third Circuit issued its decision, *see Combustion Eng'g*, 391 F.3d at 213 n.16, and the Court did not address its objections.

16

transfer of property *into* the estate and transfer of property *out of* the estate—the very distinction Appellees attempt to elide.  It noted that "state laws restricting the transfer or assignment of property … do not preclude the property from passing to the bankrupt's estate under § 541," *id.* at 491, but held that "unless the Code expressly indicates an intention to augment the rights and nature of the property interest in bankruptcy, the [estate] only succeeds to the same rights the debtor possessed in the property prepetition," and is subject to whatever limitations on assignment applied to the debtor.  *Id.* at 495.  Indeed, *Combustion Engineering* drew the same distinction, noting that under § 541, "the estate is comprised of all legal or equitable interests of the debtor in property," but that "[t]o the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate."  391 F.3d at 219 (citation omitted).

Under Appellees' theory, not only is that distinction obliterated, but the very transaction *Integrated Solutions* found impermissible is plainly authorized, and any contrary law plainly preempted, by § 1123(a)(5).  That is not a plausible reading of *Integrated Solutions*; nor is it plausible to conclude that *Combustion Engineering* effectively overruled *Integrated Solutions* in a footnote, without even mentioning the decision or discussing the fundamental bankruptcy principles that led the Court in *Integrated Solutions* to its conclusion.[15]

Other than *Combustion Engineering*, Appellees cite to little more than a handful of decisions that they claim support their view of § 1123(a).  *E.g.,* ACC Br. 6 n.5.  Most are bankruptcy court decisions.[16]  The only Court of Appeals decision on which Appellees rely is the Fourth Circuit's decision in *In re FCX, Inc.,* 853 F.2d 1149 (4th Cir. 1988).  That decision did

---

[15] Appellees surprisingly contend that *Integrated Solutions* supports their position, reasoning that it distinguished § 363 and § 704 of the Code, which do not contain express preemption clauses (and which were the basis for the preemption argument in that case), from a number of other Code provisions, including § 1123(a), which do.  ACC Br. 14-15.  But the Court never hinted that *any* provision of the Code, including § 1123(a), might preempt the state law at issue.  And its reasoning extended well beyond § 363 and § 704:  it repeatedly relied on the basic presumption that "once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law," absent a very clear indication that Congress had a contrary intent.  124 F.3d at 492 (citation omitted).

[16] Appellees rely on *Holywell Corp. v. Smith*, 503 U.S. 47 (1992), but that case merely acknowledges that § 1123(a)(5)(B) permits transfer of estate property to a liquidating trust.  No conflict between the transfer and any nonbankruptcy law was at issue in the case, which did not discuss preemption at all.  As for *In re Kaiser Aluminum Corp.*, 343 B.R. 88 (D. Del. 2006), that decision was premised on its misreading of *Combustion Engineering*, *see id.* at 95, which is incorrect for the reasons given above.

17

not involve an assignment of property to a third party, but the debtor's request to surrender certain collateral securing a creditor's claim to satisfy that claim. In any event, this Court should not follow *FCX*, which is not binding on it, directly conflicts with the subsequent and better-reasoned decision of the Ninth Circuit in *PG&E*, and is in serious tension with the basic principles that the Third Circuit has held govern bankruptcy preemption questions. Moreover, while *FCX* stated that § 1123(a)(5)(D) empowers debtors to take the actions set out in that subparagraph notwithstanding contrary law, the issue apparently was uncontested, 853 F.3d 1155 n.10, explaining the conclusory nature of the court's analysis. *FCX* did not consider any alternative reading of the preamble to § 1123(a)—none apparently being offered by the parties—did not consider the relationship between § 1123(a) and § 1142(a), did not consider the presumption against preemption in bankruptcy that the Third Circuit has articulated, and did not consider the absurd results that would follow from its interpretation were it applied to other subparagraphs within § 1123(a)(5). And while it did mention the legislative history, it got that history wrong and drew precisely the opposite conclusion from the one it should have drawn.[17]

In sum, neither the text, structure, and legislative history of § 1123(a), nor the relevant caselaw, justifies the Preemption Order. The order should be reversed.

## III.    PRESERVING THE CONTRACTUAL RIGHTS FOR WHICH THE PARTIES BARGAINED DOES NOT CONFER A "WINDFALL" ON INSURERS

Finally, Appellees contend that this Court should affirm the Preemption Order because the insurers will otherwise obtain an improper "windfall." ACC Br. 4-5, 37-40. But it is Appellees, not the insurers, who seek a "windfall." As the Supreme Court and the Third Circuit have made clear, bankruptcy generally preserves, rather than overrides, state-law property entitlements in order to prevent debtors from obtaining "a windfall merely by reason of the happenstance of bankruptcy." *Butner*, 440 U.S. at 55; *Integrated Solutions*, 124 F.3d at 492.

---

[17] The Fourth Circuit relied on Senator DeConcini's 1978 statement that if a plan proposed in conformity with § 1123(a) "is confirmed, then any action proposed in the plan may be taken notwithstanding any otherwise applicable nonbankruptcy law *in accordance with section 1142(a) of title 11*." 124 Cong. Rec. 34,005 (1978) (emphasis added). But the court dropped the italicized phrase from its quotation, *FCX*, 853 F.2d at 1154 n.7, thus omitting the crucial limitation that preemption of laws governing actions taken to implement a confirmed plan is limited to laws "relating to financial condition," 11 U.S.C. § 1142(a).

Here, the insurers merely seek to preserve the contractual provisions the parties negotiated outside bankruptcy; it is Appellees who seek to override those provisions for their own gain.

Nor is it the case that preemption of the anti-assignment provisions is necessary in order for § 524(g) bankruptcies to go forward. Congress enacted § 524(g) so that otherwise viable companies faced with overwhelming asbestos claims could reorganize; the theory was that by allowing the company to continue as a going concern, future claimants would benefit from the reorganization. *See, e.g., Combustion Eng'g*, 391 F.3d at 248 & n.69. Section 524(g) is thus all about reorganizing and maintaining the value of the ongoing business, as Debtors have done here. It is not, as Appellees now argue, all about insurance. Affording insurers their contractual rights will not prevent companies from taking full advantage of § 524(g)'s benefits.

In any event, any difficulty that might arise from the assignment of insurance rights to the trust is of the debtors' own making. Insureds in bankruptcy, as out of bankruptcy, are free to seek insurers' consent to assignment. If they do not, they run the risk that violation of the anti-assignment provisions will limit the coverage available to them. If they do, and insurers refuse, insurers run the risk that a court might deem such refusal unreasonable. In or out of bankruptcy, the failure to negotiate a consensual resolution to the assignment issue has risks for both sides.

Moreover—while the merits of the anti-assignment defense in this case are, of course, not before this Court—the law regarding the circumstances under which anti-assignment clauses can be enforced is not uniform. An insurer's failure to consent to assignment of insurance rights to a trust thus would not necessarily eliminate coverage; rather, the insurer would have to assert the anti-assignment clause as a defense to a suit seeking coverage and prevail on that defense under the standards applicable in that jurisdiction. For instance, courts in some jurisdictions have suggested that the purpose of an anti-assignment clause in a casualty or liability policy is to protect the insurer from insuring a different risk than intended, and that the question whether the assignment would alter the insured risk thus must be assessed in considering the viability of an anti-assignment defense. *See, e.g., National Am. Ins. Co. v. Jamison Agency, Inc.*, 501 F.2d 1125, 1128 (8th Cir. 1974).

An anti-assignment clause thus is not an insurer "veto" over a § 524(g) plan.  Breach of an anti-assignment clause is a defense to coverage like any other, which may or may not prevail depending on the circumstances of the case.  And § 524(g) cases routinely go forward with no assurance that the insured will prevail in insurance coverage litigation.  In such cases, creditors voting to approve a plan decide to take the risk that coverage will not be established, owing to any number of defenses insurers might possess.  The anti-assignment defense is no different.

As for Appellees' half-hearted contention that "implied preemption" should be found to avoid an "inequitable" result (ACC Br. 40), there is no reason to believe that Congress intended the Bankruptcy Code to permit debtors to avoid their self-imposed contractual obligations merely because it would be convenient for them to do so.  Even if failure to preempt the insurers' anti-assignment defense would make reorganization less easy—and, as discussed above, there is no reason to think that it would, any more than permitting insurers to raise other defenses to coverage—"[s]imply making a reorganization more difficult for a particular debtor … does not rise to the level of 'stand[ing] as an obstacle to the accomplishment of the full purposes and objectives of Congress.'"  *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1354 (9th Cir. 1994) (citation omitted).  "Congress's purpose in enacting the Bankruptcy Code was not to mandate that *every company* be reorganized *at all costs*, but rather to establish a preference for reorganizations, where they are legally feasible and economically practical."  *Id.*

In short, rather than insurers seeking a windfall, Appellees seek to gain a tactical advantage over insurers, eliminating in advance one defense to coverage.  The Bankruptcy Code does not give them this power.  The Code "was written with the expectation that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests." *Integrated Solutions*, 124 F.3d at 492.  No such overriding federal interest is implicated here, and Congress has shown no intent to preempt the terms of insurance policies.

## CONCLUSION

This Court should reverse the bankruptcy court's Preemption Order.

Dated:  July 3, 2008                    Respectfully submitted,


                                        /s/ Michael W. Yurkewicz
                                        **KLEHR, HARRISON, HARVEY
                                          BRANZBURG AND ELLERS LLP**
                                        919 Market St., Suite 1000
                                        Wilmington, DE  19801
                                        Telephone:  (302) 426-1189
                                        Facsimile:  (302) 426-9193

                                        - and –

                                        Craig Goldblatt
                                        Danielle Spinelli
                                        Nancy L. Manzer
                                        Margaret Williams Smith
                                        **WILMER CUTLER PICKERING
                                          HALE AND DORR LLP**
                                        1875 Pennsylvania Avenue, N.W.
                                        Washington, DC  20006
                                        Telephone:  (202) 663-6000
                                        Facsimile:  (202) 663-6363

                                        - and –

                                        William J. Bowman
                                        James P. Ruggeri
                                        Edward B. Parks, II
                                        **HOGAN & HARTSON, L.L.P.**
                                        555 Thirteenth Street, N.W.
                                        Washington, DC  20004
                                        Telephone:  (202) 637-5600
                                        Facsimile:  (202) 637-5910

                                        *Attorneys for Hartford Accident and Indemnity
                                        Company, First State Insurance Company, and
                                        New England Insurance Company*


                                        /s/ James S. Yoder
                                        James S. Yoder
                                        **WHITE AND WILLIAMS LLP**
                                        824 N. Market Street, Suite 902
                                        P.O. Box 709
                                        Wilmington, DE  19899-0709
                                        Telephone:  (302) 467-4524

21

-and-

Elit R. Felix, II
**MARGOLIS EDELSTEIN**
The Curtis Center, 4th Floor
601 Walnut Street
Philadelphia, PA  19106-3304
Telephone:  (215) 931-5870

***Attorneys for Allianz Global Corporate &
Specialty AG (as successor-by-partial-merger to
Allianz Verischerungs AG as to Policy No. H. 0
001 456); Allianz Global Risks U.S. Insurance
Company (f/k/a Allianz Insurance Company); and
Allianz Underwriters Insurance Company (f/k/a
Allianz Underwriters, Inc.)***


/s/ Sean J. Bellew
Sean J. Bellew
**COZEN O'CONNOR**
1201 N. Market Street
Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2026

-and-

Michael S. Davis
Jantra Van Roy
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York, New York  10022
Telephone:  (212) 223-0400

***Attorneys for AIG Casualty Company; AIU
Insurance Company; American Home Assurance
Company; Granite State Insurance Company;
Insurance Company of the State of Pennsylvania;
Lexington Insurance Company; National Union
Fire Insurance Company of Pittsburgh, Pa; New
Hampshire Insurance Company***

22

/s/ Bruce E. Jameson
Bruce E. Jameson
**PRICKETT, JONES & ELLIOTT, P.A.**
1310 King Street
Wilmington, DE  19899
Telephone:  (302) 888-6500

-and-

David C. Christian II
William J. Factor
**SEYFARTH SHAW LLP**
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603
Telephone:  (312) 460-5000

-and-

Steven M. Crane
**BERKES CRANE ROBINSON & SEAL LLP**
515 South Figueroa Street, Suite 1500
Los Angeles, CA  90071
Telephone:  (213) 955-1150

*Columbia Casualty Company, Continental Casualty Company, The Continental Insurance Company, Both In Its Individual Capacity and As Successor To Certain Interests Of Harbor Insurance Company*

/s/ John D. Demmy
John D. Demmy
**STEVENS & LEE, P.C.**
1105 North Market Street, 7th Floor
Wilmington, DE  19801
Telephone:  (302) 425-3308

-and-

Leonard P. Goldberger
**STEVENS & LEE, P.C.**
1818 Market Street, 29th Floor
Philadelphia, PA  19103
Telephone:  (215) 864-7000

*Fireman's Fund Insurance Company and National Surety Company*

23